SECURITIES AND EXCHANGE COMMISSION, Appellant in No. 79-1714

v.

BONASTIA, Peter J., Thomas C. Gaffney, Terrence C. Madden, Monte Craviss, John T. Heine, Barry Simner, Robert A. Petrallia, Robert B. Turk, Robert DiConsiglio and Lawrence J. Stern.

SECURITIES AND EXCHANGE COMMISSION

v.

BONASTIA, Peter J., Thomas C. Gaffney, Terrence C. Madden, Monte Craviss, John T. Heine, Barry Simner, Robert A. Petrallia, Robert B. Turk, Robert DiConsiglio and Lawrence J. Stern.

Appeal of Terrence C. MADDEN, Appellant in No. 79-1715.

Nos. 79-1714, 79-1715.

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1979.

Decided Feb. 7, 1980.

As Amended Feb. 28, 1980.

---

11. We make no ruling on whether the original denial of class certification was proper.

Linda D. Fienberg, Sp. Counsel (argued), David Ferber, Sol. to the Commission, Michael K. Wolensky, Asst. Gen. Counsel, Frederic Townsend, Securities and Exchange Com'n, Washington, D. C., for appellant in No. 79–1714 and cross-appellee in No. 79–1715.

John M. Burns, II (argued), New York City, for appellee in No. 79–1714 and cross-appellant in No. 79–1715.

Before ALDISERT, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question for review in this civil action brought by the Securities and Exchange Commission against Terrence C. Madden is whether the district court misused its discretion by refusing to issue a permanent injunction against Madden after it had granted summary judgment in favor of the commission, determining that Madden had repeatedly violated various provisions of the federal securities laws. Madden has cross-appealed, attacking the appropriateness of the summary judgment. We conclude that summary judgment was proper but that the district court erred by not granting the commission the injunctive relief requested. We therefore reverse that portion of the district court's order denying the injunction and remand with a direction that an injunction be entered to prevent Madden from further engaging in conduct in violation of certain provisions of the securities laws.

### I.

Before filing a bankruptcy petition in 1977, Investors Economics Systems, a Delaware corporation, and its nine wholly- owned subsidiaries, were engaged in the sale of unregistered securities to the general public in the form of limited partnership interests in real estate ventures. Between 1971 and 1977 sales of these interests were made to thousands of investors for proceeds in excess of $40 million. Terrence C. Madden, cross-appellant in this court, was an executive vice president and a director of Investors and owned 67,000 shares of its stock. From 1972 through 1976 Madden was president of IES Management Group, the registered broker-dealer subsidiary of Investors, which acted as an investment advisor and received as fees for its services approximately one-third of the limited partners' original investments. From 1976 to 1977 Madden was also president of Westwood, Incorporated, another of Investor's subsidiaries, which served as general partner in fifty of the approximately eighty-eight limited partnerships syndicated by Management Group.

The limited partnerships were sold to the investing public primarily as means to provide tax shelters in real estate ventures. They were structured in such a way that the limited partners provided all the seed capital for the venture and owned approximately seventy-five percent of the partnership, while the general partner owned the remaining twenty-five percent. A certain amount of cash flow was guaranteed to the limited partners as well as up to 100 percent of the tax losses incurred by the partnership.

In the typical syndication sequence, an Investors employee would locate suitable residential or commercial property that was for sale. An officer of Investors, usually Madden, would negotiate the purchase. After a tentative agreement, Madden, or one of the other officers, would then meet with Investors' accountant and attorneys to discuss the preparation of disclosure documents. An offering memorandum setting forth the basic terms of the proposed offering would be prepared.

Frequently, however, the private placement memoranda released to the public contained fundamental inaccuracies, either be-

cause the terms of sale were modified after preparation of the memoranda or because unverified financial projections were used therein. Often the limited partners did not receive notice of the revisions. By the end of 1974, when a large number of the partnerships had experienced financial reverses and either voluntarily ceased operations or suffered foreclosure, an attempt was made to mollify the limited partners and retain them as investors. Madden and other officers of Investors devised a policy of accommodating these people by assigning them portions of Westwood's interests in the partnerships. This was accomplished by offering a disgruntled investor a credit for his original investment, requiring him to match that amount with additional funds, and then assigning to him a portion of the Westwood general partnership interest. Purchasers of these interests were told that they were limited partners for purposes of liability and many were promised tax write-offs even though none could be made available pursuant to the offering memoranda. At no time were these investors informed of the legal consequences of the sales to them of general partnership interests. Furthermore, Madden and the other officers never disclosed the new assignments to the original limited partners of those partnerships in which Westwood interests were assigned to other investors. In at least six of the partnerships the general partner's interest was oversold and assigned in excess of the interest owned by Westwood. Several Investors employees, including Madden, were authorized to issue credits and effectuate these assignments. Numerous other examples of improper activity are evident

from the record, including overselling the number of limited partnership interests in certain ventures, and, in at least thirteen of the partnerships for which adequate funds were raised to purchase the realty and certificates of limited partnership were filed, failing to obtain any property.

After nearly two years of investigating the matter, on March 13, 1978, the Securities and Exchange Commission filed its complaint charging Madden[1] with violations of the registration and anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a), and of the anti-fraud and customer protection provisions of the Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o(c)(2), and 78o(c)(3), and under 17 C.F.R. §§ 240.10b–5, 240.15c2–4, 240.15c3–3(e), and 240.15c3–3(g). The commission sought a final judgment permanently enjoining Madden from further violating the statutory provisions and rules enumerated in the complaint.[2] Madden's answer generally denied the allegations of the complaint. On June 13, 1978, the commission moved for summary judgment and for an order of permanent injunction or, in the alternative, a preliminary injunction against Madden for his role in the securities schemes. After a hearing on the matter, and after considering the papers filed, including Madden's affidavit in opposition to the motion, the district court found that, based on the undisputed facts, there was no genuine issue of material fact concerning the securities violations by Investors companies or Madden's involvement therein, and concluded that the commission was entitled to an order granting summary judgment. The court specifically determined that dur-

---

1. Nine other defendants were also named in the complaint. They were Peter Bonastia, president of Investors, Thomas Gaffney, Monte Craviss, John Heine, Barry Simner, officers of Investors or its subsidiaries, Robert Petrallia, Robert Turk, Robert DiConsiglio, attorneys for Investors, and Lawrence Stern, an accountant for Investors. Upon the filing of the complaint all defendants except Madden agreed to consent decrees and imposition of permanent injunctions against them. These judgments were entered on March 13, 1978.

2. The commission filed numerous affidavits and exhibits in support of its case. Among these supporting papers were the comprehensive investigation report of A. Lawrence Ehrhart, C. P. A., the securities compliance officer who examined the books and records of the corporation, including offering memoranda, subscription agreements, and other documents; depositions of several persons who had conducted business with Investors and its subsidiaries: Madden's own deposition; and exhibits in the form of corporate resolutions and correspondence to and from Madden showing the various offices he held.

ing his association with the companies, Madden "knew or should have known, and acted in willful and reckless disregard of material facts," thereby committing the securities violations. App. at 544.

The court declined to order injunctive relief, however, because Madden was presently engaged in an occupation other than the sale of securities. The commission later moved the court to reconsider its order pursuant to Rule 59 of the Federal Rules of Civil Procedure but the court denied the motion on the ground that Madden showed no likelihood of re-engaging in the securities business. These cross-appeals followed.

## II.

Section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), and section 21(d) of the Securities Exchange Act, as amended, 15 U.S.C. § 78u(d), provide that whenever it appears to the commission that a person is engaged in acts in violation of the securities laws, an action to enjoin those acts may be brought and, upon a proper showing by the commission, the court shall grant the injunctive relief requested. The Supreme Court has viewed injunctive relief as necessary in these actions for the basic protection of the investing public, e. g., SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 191, 84 S.Ct. 275, 282, 11 L.Ed.2d 237 (1963), and this court has recently expressed its "awareness of the importance of injunctions in enforcing" the securities laws, SEC v. Warren, 583 F.2d 115, 122 (3d Cir. 1978). The purpose of injunctive relief is not to punish the violator, but to deter him from committing future infractions of the securities laws. SEC v. Koracorp Industries, Inc., 575 F.2d 692, 697 (9th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

The well established standard developed by the courts to determine if an injunction should issue in a case involving securities violations reflects these purposes and is based on a determination of whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct. See Tanzer v. Huffines, 408 F.2d 42, 43 n. 1 (3d Cir. 1969)

(per curiam); see also SEC v. Blatt, 583 F.2d 1325, 1334 (5th Cir. 1978); SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90, 99–100 (2d Cir. 1978). When examining the factors to be considered in reaching a determination under this standard, courts have looked to, among other things, the degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against ,future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur. E. g., SEC v. Universal Major Industries Corp., 546 F.2d 1044, 1048 (2d Cir. 1976), cert. denied, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977). Essentially, a court makes a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed. SEC v. Koracorp Industries, Inc., 575 F.2d at 699; SEC v. Bausch & Lomb, Inc., 565 F.2d 8, 18 (2d Cir. 1977); SEC v. Management Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975).

In exercising his discretion in this case, the district court apparently considered only one fact, Madden's present occupation, and, based solely on that fact, determined that an injunction was unnecessary to protect the public interest. The court stated:

THIS COURT FURTHER FINDS THAT defendant Madden is not currently engaged in any business activities subject to the Federal Securities Laws and therefore it is not necessary for this Court to enter an injunction at this time enjoining defendant Madden from engaging in acts, practices and courses of conduct in violation of the aforecited sections and rules of the Federal Securities Laws; in this connection, should defendant Madden propose to engage in any business activities in the future subject to the Federal Securities Laws, he is hereby ORDERED, prior to engaging in any such activities, to notify the [commission's regional office].

THIS COURT RETAINS JURISDIC-TION for the purpose of determining, ordering and implementing any further relief which it deems necessary.

App. at 546.

We conclude that, in so holding, the district court misused its discretion. By determining that Madden's change in occupation, in and of itself, precluded the necessity for an injunction, the district court failed to evaluate the other factors that are essential to a proper determination. Changed circumstances of the violator are relevant in determining whether an injunction shall issue, but a change in occupation, without more, will not provide a complete defense to an injunction suit. *See SEC v. Koracorp Industries, Inc.*, 575 F.2d at 698. The district court inexplicably ignored the recurrent nature of Madden's violations and gave no weight to the inferences naturally drawn therefrom. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972). *See also SEC v. Koracorp Industries, Inc.*, 575 F.2d at 698. For more than five years, Madden was a central participant in a fraudulent scheme to sell real estate interests to the public. The recurrent nature of the violations and of Madden's involvement in them were evident to the district court, which noted that "the proofs show beyond dispute that Mr. Madden was a high ranking corporate official and a key individual in the offerings complained of, and that numerous violations were committed under circumstances where he had full knowledge of the facts." App. at 540. Therefore, unlike cases in which the violation amounted to no more than an isolated occurrence, *see, e. g., SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8 (2d Cir. 1977), here we have a situation in which the repetitiveness of the violations weighs heavily in favor of the imposition of an injunction. Furthermore, the district court specifically found that Madden acted with scienter of the violations. App. at 540, 544. That scienter was clearly established underscores the propriety of injunctive relief in this case. *Cf. SEC v. Aaron*, 605 F.2d 612 (2d Cir. 1979) (government enforcement actions brought under §§ 10(b) and 21(d) of the 1934 Act do not require a showing of scienter but only a showing of negligence), *cert. granted*, —— U.S. ——, 100 S.Ct. 227, 62 L.Ed.2d 168 (1979). As an officer and director of Investors, Management Group, and Westwood, Madden knew, or should have known, of the violations.

We are mindful that a decision whether to issue an injunction is necessarily left to the sound discretion of the district court, *see, e. g., United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *United States Steel Corp. v. Fraternal Association of Steelhaulers*, 431 F.2d 1046, 1048 (3d Cir. 1970), and that a strong showing must be made to reverse a court's determination. We conclude, however, that the commission has satisfied that standard here. When a district court refuses to apply well-settled legal precepts to a conceded set of facts, it acts outside its allowable discretion. *Union Tool Co. v. Wilson*, 259 U.S. 107, 112, 42 S.Ct. 427, 429, 66 L.Ed. 848 (1922).

### III.

Madden's cross-appeal need not detain us long. Essentially he argues that the district court erred by granting the commission's motion for summary judgment on the alleged violations because the record below does not adequately support the commission's factual allegations and because the allegations were sufficiently refuted by Madden to raise material issues of fact. In addition, he argues that he constantly relied on advice from attorneys and accountants in all his activities with Investors and its subsidiaries. His arguments prove unsuccessful.

We have thoroughly reviewed the record and conclude, as did the district court, that "[t]he moving papers contain proofs showing without question that the violations alleged did in fact occur." App. at 539. We also agree with the district court that there was no genuine issue of material fact. Affording Madden the bene-

fit of all reasonable doubts and inferences, as we are required to do because of the procedural posture of this case, *see Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), we note that Madden's answer and his affidavit in opposition to the summary judgment motion do little more than deny the commission's allegations without setting forth any evidentiary support on which to predicate a factual dispute. Denials in the form of legal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment. Fed.R.Civ.P. 56(e); *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

Concerning Madden's final contention, to the extent he attempts to argue he relied in good faith on opinions of others, his argument must fail in view of the high ranking positions he held with the various companies engaged in the illegal activity and the specific finding of scienter made by the district court. *See SEC v. Manor Nursing Centers, Inc.*, 458 F.2d at 1101.

### IV.

The order of the district court will be reversed insofar as it denied the issuance of an injunction against Madden and the case remanded with a direction that an injunction be entered. That part of the order entering summary judgment in favor of the commission will be affirmed.