LLOYD E. GAUNTT, ET AL.,[1] PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1704–81, 6332–81, 25642–81, 29502–81, 2275–82.     Filed January 12, 1984.

*George Mac Vogelei* and *William K. Hogan,* for the petitioners.

*Claire Priestley–Cady,* for the respondent.

OPINION

SIMPSON, *Judge:* This matter is before the Court on the Commissioner's motion for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2] The issues raised by the motion are: (1) Whether the Commissioner properly applied the amended section 1.612–3, Income

---

[1]Cases of the following petitioners have been consolidated herewith: George C. Huff, Inc., docket No. 6332–81; James N. Donnerstag and Linda K. Donnerstag, docket No. 25642–81; Richard E. Keane and Constance M. Keane, docket No. 29502–81; and Robert Boomsliter and Jane Boomsliter, docket No. 2275–82.

[2]Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.

Tax Regs., to disallow certain partnership loss deductions for advanced royalties claimed by the petitioners for 1976; and (2) whether the varying interest rule of section 706(c)(2)(B), I. R. C. 1954,[3] prohibits the allocation of such losses to the petitioners.

The Commissioner determined the following deficiencies in the petitioners' Federal income taxes:

| Docket No. | Petitioner | TYE Dec. 31— | Deficiency |
|---|---|---|---|
| 1704–81 | Lloyd E. Gauntt | 1976 | $76,511 |
| 6332–81 | George C. Huff, Inc. | 1977 | 26,929 |
| 25642–81 | James N. Donnerstag and Linda K. Donnerstag | 1976 | 71,913 |
| 29502–81 | Richard E. Keane and Constance M. Keane | 1976 | 13,523 |
| 2275–82 | Robert Boomsliter and Jane Boomsliter | 1976 | 15,619 |

Each of the individual petitioners had his or her legal residence in California when the petition was filed, and the corporate petitioner had its principal place of business in California when its petition was filed. All the individual petitioners filed their Federal income tax returns for 1976 with the Internal Revenue Service Center, Fresno, Calif.; and the corporate petitioner filed its return for the taxable year ended October 31, 1977, with the same service center.

Some of the facts have been stipulated for the purposes of the motion for partial summary judgment. Moreover, the Commissioner has conceded that, for the purposes of the motion, the transactions giving rise to the deductions at issue occurred as described in two affidavits submitted by one of the limited partners and in documents relating to Valley Investments, Ltd. (Valley), one of the limited partnerships involved in the present case.

Each of the petitioners was a member of a separate limited partnership. Such partnerships were among 10 California limited partnerships formed on October 28, 1976. On the same day, the partnerships formed a joint venture known as Boone Powellton Coal Partners, Ltd. (the joint venture).

The general partners of the partnerships were two California corporations, Jarndyce, Ltd. (Jarndyce), and George C.

---

[3] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

Huff, Inc.[4] All the stock of Jarndyce was owned by a trust established by Robert Kantor for the benefit of members of his family other than himself. Mr. Kantor was the president, vice president, and sole director of Jarndyce. Douglas Wolf, Mr. Kantor's law partner, owned, on behalf of himself and others, all the stock of the Boone Powellton Coal Co., a West Virginia corporation (the corporation). The law firm was the counsel for the corporation. The corporation acquired the right to mine coal from certain property located in West Virginia pursuant to the lease that it executed with the owners of the property on November 4, 1976. The lease provided that the corporation would pay the owners an advanced royalty of $2,500,000.

Acting on behalf of its constituent partnerships, the joint venture executed a contract with the corporation on October 28, 1976, providing that the corporation and the joint venture "irrevocably" agreed to execute mineral subleases of the West Virginia property under the terms and conditions contained in an unexecuted copy of a sublease attached to the agreement. Mr. Wolf was authorized by Jarndyce to execute such an agreement on behalf of Jarndyce as general partner of the limited partnerships. The sublease provided for the payment of advanced royalties of $72,000,000 to the corporation in the aggregate—$24,000,000 was to be paid in cash and $48,000,000 pursuant to an 11-year nonrecourse note. The sublease also provided that the partnerships' duties under the sublease were conditioned upon the corporation's delivery by December 24, 1976, of an opinion letter evidencing its title in the West Virginia property. The agreement provided that, on or before November 5, 1976, the partnership would pay the corporation $225,000, whereupon the lease would be executed. The closing date was subsequently extended to December 31, 1976.

Section 1.612–3(b)(3), Income Tax Regs., as it stood prior to October 29, 1976, allowed the "payor" of "advanced royalties," at his option, to deduct the advanced royalties in the year they were paid or accrued or in the year of the sale of the mineral product in respect of which such royalties were paid. On October 29, 1976, the IRS issued News Release IR–1687 announcing a proposed amendment of the regulation. Such proposed amendment was published in the Federal Register on

---

[4]Although George C. Huff, Inc., is a general partner of the partnerships, it also invested as a limited partner in Valley, one of the partnerships involved in the present case.

November 2, 1976. 41 Fed. Reg. 48133. The amendment provided that advanced royalties could only be deducted in the year of the sale of the mineral product to which they related. Concerning the effective date of the amendment, the news release provided:

Under the proposed amendment, the treatment of advanced royalties would be revised, effective October 29, 1976, unless the advanced royalties are required to be paid pursuant to a mineral lease which (i) was binding prior to that date upon the party who in fact pays or accrues such royalties, or (ii) was required, pursuant to a written contract, to be executed by the party who in fact pays or accrues such royalties; provided that such party establishes, to the satisfaction of the Secretary or his delegate, that under all the facts and circumstances the contract was binding upon such party prior to that date. For purposes of clause (ii) above, a contract will in no event be considered to be binding upon such party if the obligations imposed on such party prior to October 29, 1976 were not substantial or were illusory.

On December 19, 1977, the amended regulation was promulgated in substantially the same form in which it had been proposed. T.D. 7523, 1978–1 C.B. 192; 42 Fed. Reg. 63640 (1977). The Treasury Decision restated the language of the news release regarding the effective date of the amendment, but added the following statement:

In the case of advanced royalties paid or accrued by a partnership the "party" who, under the preceding paragraph, must be obligated prior to October 29, 1976, with respect to the payment of the advanced royalties is the partner, not the partnership. For purposes of the preceding sentence a partner is considered obligated prior to October 29, 1976 if the partnership was obligated immediately prior to that date and then only to the extent of the partner's distributive share of the partnership's liability for such payment immediately prior to that date. * * * [T.D. 7523, 1978–1 C.B. at 194.]

On December 8, 1976, Valley issued a confidential memorandum, containing a copy of the lease to be executed by Valley and the corporation. Such lease provided that Valley was to pay the corporation a lump-sum advanced royalty of $6,750,000; $2,250,000 was to be paid in cash, and the balance, $4,500,000, was to be paid pursuant to an 11-year nonrecourse note. The memorandum also contained the opinion of the tax counsel of the partnership regarding the Federal income tax aspects of the offering. The counsel concluded that the advanced royalty would be deductible in the year paid or accrued

pursuant to section 1.612–3(b)(3), Income Tax Regs., as it stood prior to amendment. The counsel was aware that on October 29, 1976, the IRS had proposed to amend such regulation so as to deny a deduction for 1976 in the absence of a sale of coal, but the counsel concluded that the amendment would not apply to Valley since, on October 28, 1976, the joint venture of which Valley was a member had executed a contract to make a lease with the corporation. However, the counsel warned that the Commissioner might seek to apply the regulation as amended to Valley to deny the royalty deduction, specifically pointing out that the limited partners:

will have become partners after October 29, 1976, and the issue is therefore raised as to whether the admission of such parties, and the use of funds contributed by them to pay the advanced royalties, will cause the payments to have been made by a different party than the one bound in the contract.

The proposed amendment contains no explanation of the term "party" and the Service has given no indication on whether admission of new partners would result in the partnership being treated as a new "party." There is, therefore, a risk that the Service will take an unfavorable position on this question.

Each of the individual petitioners in the present case joined his respective partnership after November 20, 1976, but before December 31, 1976, in reliance upon offering memorandums similar to that circulated by Valley. Specifically, the petitioners relied upon the opinion of the tax counsel that the advanced royalty would be deductible in 1976.

On December 31, 1976, Valley received the required assurance of good title from the corporation and executed the mineral sublease and amendments to the sublease. The lease, as amended, provided that Valley would pay an advanced royalty of $4,050,000 to the corporation—$1,350,000 in cash and the balance, $2,700,000, by an 11-year nonrecourse note. The other four partnerships involved in the present case executed subleases with the corporation for their respective portions of the West Virginia property; such subleases were essentially identical to that executed by Valley. The remaining five partnerships, on whose behalf the sublease contract was executed, were never funded, and such partnerships never executed subleases nor paid advanced royalties.

Each of the partnerships reported its income and losses using the accrual method of accounting. None of the five partnerships mined or sold any coal in 1976.

On their partnership returns of income for 1976, the five partnerships involved in the present case claimed deductions for advanced royalties in the following amounts:

| | |
|---|---|
| Valley Investments, Ltd ............................ | $4,050,000 |
| Creek Investments, Ltd ............................ | 3,172,500 |
| Occidental Investments, Ltd........................ | 3,172,500 |
| King Merchants, Ltd ............................... | 4,050,000 |
| Benham Group, Ltd ............................... | 3,150,000 |

The individual petitioners claimed losses resulting from their distributive shares of partnership advanced royalty deductions. The Commissioner denied such deductions in their entirety on the ground that the 1977 amendment to section 1.612–3(b)(3) of the regulations operated retroactively to invalidate the deduction of the advanced royalties. In the alternative, he maintains that the partnerships incurred the advanced royalties before the petitioners became partners and that therefore the petitioners' deductions for their shares of such advanced royalties were barred by the varying interests rule of section 706(c)(2)(B). The Commissioner's motion for partial summary judgment is addressed only to the petitioners' deductions of their shares of the advanced royalty payments.

Rule 121(b) provides that a decision may be rendered on a motion for summary judgment if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. A partial summary adjudication may be made which does not dispose of all the issues in the case." The factual materials presented and the inferences to be drawn from such materials "must be viewed in the light most favorable to the party opposing the motion." *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982), and cases cited therein. On the other hand, a motion for summary judgment may not be defeated by the mere allegation that there is a dispute over a material fact; the adverse party must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d); see *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–290 (1968); *Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.*, 332 F.2d 216, 219 (2d Cir. 1964).

*Elkins v. Commissioner*, 81 T.C. 669 (1983), involved facts very similar to those of the present case. However, in *Elkins*, we assumed, for purposes of the Commissioner's motion for partial summary judgment, that the partnership entered into a sublease agreement prior to October 29, 1976, pursuant to which it was obligated to pay an advanced royalty. 81 T.C. at 671 n. 2. The Commissioner argued that since the petitioner in *Elkins* was not a member of the partnership before October 29, 1976, the amended regulation applied as a matter of law to bar his deduction of his share of the advanced royalties. We rejected such argument. We found that the more reasonable interpretation of the effective date provisions contained in the news release was that *only* the partnership had to be bound, prior to October 29, 1976, to pay the advanced royalties, in order to avoid the application of the amended regulation. We held that it was unreasonable for the Commissioner to define retroactively the term "party" to include a member of the partnership. 81 T.C. at 677, 681 n. 21. Since there was a question of fact concerning whether the petitioner was injured by relying on the effective date provisions contained in the news release, we denied the Commissioner's motion for partial summary judgment.

Although the Commissioner's grounds in support of his motion for partial summary judgment are stated in the alternative, such grounds are related. The Commissioner's arguments may be summarized as follows: If the partnerships were not obligated to pay advanced royalties until after October 29, 1976, then such royalties are subject to section 1.612–3(b)(3), Income Tax Regs., as amended, and may not be deducted in 1976, since no coal was sold in 1976. On the other hand, if the partnerships were obligated to pay advanced royalties pursuant to a lease or contract executed prior to October 29, 1976, then such royalties were incurred prior to the time the limited partners joined the partnerships, and losses attributable to the royalties may not be retroactively allocated to the limited partners.

The Commissioner contends that *Elkins* is distinguishable from the present case. In *Elkins*, we assumed that the partnership entered a binding sublease agreement prior to October 29, 1976. In the present case, the question of whether the partnerships were, prior to October 29, 1976, subject to a

binding obligation to execute subleases and pay advanced royalties is squarely presented. The Commissioner argues that the partnerships were not so obligated and thus that section 1.612–3(b)(3) of the regulations, as amended, controls the present case. Thus, the Commissioner concludes that the advanced royalties are not deductible for 1976.

In the news release, the Commissioner stated that the treatment of advanced royalties would be revised, effective October 29, 1976, unless the advanced royalties were required to be paid pursuant to a mineral lease which was required to be executed pursuant to a written contract that was binding prior to October 29, 1976. The news release stated that a contract would not be binding if, prior to October 29, 1976, the payor's obligations under it "were not substantial or were illusory." The Commissioner contends that the partnerships' obligations under the sublease agreement were "not substantial or were illusory." After a review of the record, we conclude that the Commissioner is correct and that the partnerships' obligations prior to October 29, 1976, were illusory as a matter of law.

In the present case, the corporation entered a master lease with unrelated parties to mine property in West Virginia. The corporation was obligated to pay advanced royalties of $2,500,000 to the master lessor. The corporation then executed the sublease agreement with the 10 limited partnerships, whereby each partnership purportedly agreed to sublease a portion of the property and pay to the corporation advanced royalties totaling more than 28 times the amount provided for in the master lease—two-thirds of such royalties were payable pursuant to a nonrecourse note. The sublease agreement was not negotiated at arm's length: Jarndyce was a general partner of the partnerships; Mr. Kantor was the president, vice president, and sole director of Jarndyce, as well as settlor of the trust that owned Jarndyce. His law partner, Mr. Wolf, was a shareholder in the corporation, and the law firm was counsel to such corporation. In spite of the fact that Mr. Wolf was an owner of, and the counsel to, the sublessor corporation, Jarndyce authorized him to execute the sublease agreement on its behalf as general partner of the sublessee partnerships. Thus, Mr. Wolf was on both sides of the sublease agreement, as owner and counsel to the corporation, and as representative of

Jarndyce. In addition, he was also in a law firm with the president and sole director of Jarndyce. Since the interests on both sides of the sublease agreement were so closely affiliated, we find it highly improbable that the partnerships were, subsequent to the execution of such agreement, obliged to execute subleases and pay the specified advanced royalties. See *Derr v. Commissioner*, 77 T.C. 708, 724 (1981). In other words, there was no one to enforce the ostensible obligations. See, e.g., *Schulz v. Commissioner*, 686 F.2d 490, 494 (7th Cir. 1982), affg. a Memorandum Opinion of this Court.

The illusory nature of the partnerships' obligations under the agreement is confirmed by the events which occurred subsequent to its execution. Although the sublease contract provided that the 10 partnerships, acting in concert through the joint venture, irrevocably committed themselves to execute coal subleases and to pay advanced royalties as provided in the attached lease, only the 5 partnerships involved herein were ever funded, and only those partnerships eventually executed subleases. Furthermore, the amounts of the advanced royalties which such partnerships ultimately agreed to pay were vastly less than the total amount of advanced royalties provided for in the agreement to lease. It is clear that the partnerships did not consider themselves "irrevocably" bound to execute subleases or pay specified advanced royalties after they executed the sublease contract on October 28, 1976.

Where the performance of a party's obligations under a contract is subject to such party's unlimited discretion, the duties ostensibly imposed upon that party are illusory for income tax purposes. *Schulz v. Commissioner, supra; Alterman Foods, Inc. v. United States*, 505 F.2d 873 (5th Cir. 1974); *Saunders v. United States*, 450 F.2d 1047 (9th Cir. 1971). On the record before us, it is clear that the 10 partnerships did not obligate themselves to execute coal leases and pay advanced royalties pursuant to the terms of the contract executed on October 28, 1976. An owner of the lessor represented the lessee, and whether the leases would be executed at all, and if so, what amounts of advanced royalties would be paid, clearly depended upon developments occurring after the contract was executed. The "obligations" of the partnerships prior to October 29, 1976, were illusory within the meaning of the news release, and the partnerships were not required, prior to

October 29, 1976, to execute coal leases and pay the specified advanced royalties.

The petitioners allege that any question concerning whether their obligations under the agreement to lease were illusory presents a factual issue that cannot be decided on a motion for partial summary judgment. However, from the agreed facts, we have concluded that the parties to the agreement to lease were under common control and that the obligations of the partnerships under such agreement were illusory immediately prior to October 29, 1976. If the petitioners had any specific facts indicating the bona fide nature of the agreement, they were required to point to such facts in order to avoid a summary adjudication. *McDonnell v. Flaharty*, 636 F.2d 184, 187 (7th Cir. 1980); *Securities and Exchange Commission v. Bonastia*, 614 F.2d 908, 913-914 (3d Cir. 1980); *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 63 (9th Cir. 1973). Since they have pointed to no such facts, and since we have no reason to believe that a trial would produce any evidence indicating that the agreement was bona fide, we have concluded that the issue may properly be decided by a motion for partial summary judgment.

Under these circumstances, section 1.612–3(b)(3), Income Tax Regs., as amended, is applicable, and the petitioners may not deduct any portion of the advanced royalties for 1976. See *Wing v. Commissioner*, 81 T.C. 17 (1983); *Wendland v. Commissioner*, 79 T.C. 355 (1982). The Commissioner's motion for partial summary judgment will be granted.

*An appropriate order will be issued.*