JIM AND EMILY ZEGEER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zegeer v. Commissioner
Docket No. 12509-80.
United States Tax Court
T.C. Memo 1984-587; 1984 Tax Ct. Memo LEXIS 86; 49 T.C.M. (CCH) 26; T.C.M. (RIA) 84587; November 6, 1984. *86 Ps' claimed their share ($15,165) of an advanced royalty payment of $5,025,000 accrued by Boone County Coal Properties (Boone), in which husband-P owned a limited partnership interest. LJP partnership formed Boone on October 27, 1976, and selected G, a mine financing expert, as general partner.On the same day Boone entered into a mineral sublease with LJP obligating Boone to pay or accrue advanced royalties. Although a partner in LJP was also the initial limited partner in Boone, G executed sublease and promissory note for Boone. Held, Boone was under a binding obligation prior to October 29, 1976. Accordingly, sec. 1.612-3(b)(3), Income Tax Regs., as effective prior to that date applies. Held further, the "not substantial or were illusory" test of T.D. 7523, 1978-1 C.B. 192, applies only where advanced royalties are required pursuant to a written contract to execute a lease providing for such payments. Morton S. Taubman and Daniel P. Hodin, for the petitioners. Cynthia J. Mattson and Kendall C. Jones, for the respondent. CANTREL MEMORANDUM OPINION CANTREL, Special Trial Judge: This case was called from the calendar for the Motions Session of the Court at Washington, D.C., on *87 October 3, 1984 for hearing on respondent's Motion for Partial Summary Judgment filed on August 16, 1984, pursuant to Rule 121, [1] and petitioners' Cross Motion for Partial Summary Judgment, filed on September 12, 1984. [2]
Respondent, in his notice of deficiency issued to petitioners on April 14, 1980, determined a deficiency in petitioners' Federal income tax in the amount of $5,676.00 for the calendar year ending December 31, 1976. This deficiency determination was based primarily on respondent's disallowance of a loss deduction attributable to petitioner Jim Zegeer's distributive share ($15,165.00) of an advanced royalty payment of $5,025,000.00 by a partnership in which Mr. Zegeer was a limited partner. Respondent also disallowed Mr. Zegeer's distributive share of a partnership investment tax credit in the amount of $153.00. This latter issue is not before the Court on these motions. Both motions for partial summary judgment, therefore, involve solely the loss *88 deduction claimed by virtue of petitioner Jim Zegeer's ownership of a fractional share of a limited partnership interest in Boone County Coal Properties (Boone), a coal mine tax shelter limited partnership. [3]
The partnership was formed and entered into a sublease of coal mining property on October 27, 1976. Boone was set up with Richard Guthrie, a mine financing expert chosen by LJP partnership, as general partner and Jay Landesman, who was a promoter of Boone, as initial limited partner. Mr. Landesman was also a general partner in LJP partnership, which entered into the sublease with Boone. In turn, LJP, which prepared all or most of the documentation for Boone, leased the properties on the same day the sublease was executed from George Nielen, who was a partner in L&N Associates, also a limited partner in Boone. Mr. Nielen had purchased the property in April 1976. No coal was produced and sold in 1976. The sublease between LJP and Boone called for an advanced royalty payment in 1976 by Boone to LJP of $5,025,000, of which $1,525,000 was to be paid from the cash proceeds of the sales of partnership *89 interests by December 15, 1976, and $3.5 million was to be in the form of a nonrecourse promissory note secured by the properties and by the sublease. The private placement memorandum accompanying the offer of limited partnership interests stated that the terms of the sublease were not a result of arm's length negotiations. On October 29, 1976, the Internal Revenue Service published News Release IR-1687 announcing proposed amendments to section 1.612-3(b)(3), Income Tax Regs., stating that the amendments would be effective as of October 29, 1976. The amended regulation was promulgated in T.D. 7523, 1978-1 C.B. 192. The amendments precluded deduction of advanced royalty payments in years when no minerals are produced and sold. The Treasury Decision stated that the proposed regulation would take effect October 29, 1976, except-- * * * the amendment will not apply if prior to October 29, 1976 (i) the payment of the advanced royalties was required pursuant to a mineral lease which was binding upon the party who in fact pays or accrues such royalties, or (ii) the payment of the advanced royalties was required by reason of a written contract which bound the party who in fact pays or accrues *90 such royalties to execute a lease requiring the payment of the advanced royalties. For purposes of clause (ii) of the preceding sentence, the party must establish, to the satisfaction of the Secretary or his delegate, that under all the facts and circumstances the contractual obligation to pay the advanced royalties was binding upon him prior to that date. In addition, a contract will in no event be considered to be binding upon the party if the obligations imposed on the party prior to October 29, 1976, were not substantial or were illusory. [T.D. 7523, supra at 193-194.] Respondent moved for partial summary judgment on the theory that the new regulation applied to Boone because Boone was not obligated prior to October 29, 1976 to pay advanced royalties to LJP. Respondent argues that because some of the same parties were involved in both Boone and LJP, and because Boone admitted in its private placement memorandum that the terms of the sublease were not arrived atin arm's length negotiations, the sublease was not binding but contained an illusory obligation. [4] *91 Petitioners oppose respondent's motion and cross move for partial summary judgment claiming that Boone was in fact under a binding obligation to pay the advanced royalties on October 27, 1976, and its obligation was not illusory. Petitioners further argue that the "not substantial or were illusory" test of T.D. 7523, supra, applies only to the situation described in clause (ii) of the Treasury Decision, in which a partnership has entered into a contract prior to October 29, 1976 to execute a sublease and pay advanced royalties.According to petitioners, Boone had a binding obligation pursuant to a sublease, although the terms had not been arrived at in arm's length negotiations. For us to grant either motion for partial summary judgment, petitioners or respondent must show that no genuine issue of a material fact exists and that they are entitled to judgment as a matter of law. Jacklin v. Commissioner,79 T.C. 340, 344 (1982); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). The present dispute concerns the proper treatment for tax purposes *92 of advanced royalties accrued entirely in 1976 by the Boone partnership. The parties agree on all the pertinent facts relative to this issue, and ask us to decide as a matter of law whether Boone was under a binding obligation prior to October 29, 1976, to pay the advanced royalties. For the reasons stated below, we agree withpetitioners. We therefore deny respondent's Motion for Partial Summary Judgment and grant petitioners' Cross Motion for Partial Summary Judgment. [5] *93 Respondent relies on Gauntt v. Commissioner,82 T.C. 96 (1984), in his claim that the amended regulation is applicable to petitioners. The facts in Gauntt are substantially different from those in the case at bar. Taxpayers in Gauntt were members of five of the ten limited partnerships which on October 28, 1976, entered into a written contract agreeing to execute a mineral sublease. The Court held that the partnerships' obligations pursuant to the contract to execute a sublease, which contained a provision for payment of advanced royalties, were illusory where the sublease was amended after October 29, 1976 and before the partnerships executed it. Only five of the ten *94 partnerships actually executed the sublease in December 1976, and the amounts of advanced royalties they eventually agreed to pay were "vastly less" than the total amount of advanced royalties originally provided for in the contract. Moreover, an owner of and counsel to the sublessor corporation was authorized by the same corporation, as general partner of the sublessee partnerships, to execute the sublease. Thus, this attorney was on both sides of the sublease agreement. Finally, Gauntt dealt with the situation in clause (ii) of the Treasury Decision, i.e., where the parties had contracted in writing to sign a sublease. In that situation, and for the reasons set forth above, the Court held that the purported obligations were illusory and therefore not binding. In the present case, the parties signed a sublease before October 29, and are therefore within the first situation mentioned in the Treasury Decision under which the effective date of the amended regulation would be inapplicable. Thus, in order for former section 1.612-3(b)(3), Income Tax Regs., to apply, Boone must have been bound to pay advanced royalties pursuant to the sublease executed on October 27. Here, unlike *95 the situation in Gauntt, the amount of advanced royalties did not change after October 29, and Boone did in fact sell all its units so that the partnership was fully funded and able to proceed with the sublease terms. Furthermore, no one person represented both the sublessor and sublessee. Respondent makes much of the fact that LJP set up Boone and chose Richard Guthrie, a mining specialist and financial analyst for two different banks, as the general partner. Respondent produced no concrete evidence, nor did he argue, that Mr. Guthrie had any financial interest in LJP or that he was connected with it in any other way. Mr. Guthrie was to receive a management fee for 1976 from the proceeds of the sale of Boone partnership interests. He owned 2 percent of Boone, and could not withdraw from his position unless all limited partners agreed. Mr. Guthrie executed the sublease and promissory note on behalf of Boone. Mr. Landesman, a principal in LJP and promotor of Boone, served as Boone's initial limited partner with a capital contribution of $100 until the partnership interests were sold to investors. As a limited partner, however, Mr. Landesman was prohibited by the terms of the partnership *96 agreement from participating in the management of Boone. Thus, although Mr. Landesman participated in drawing up Boone's documents, he could not and did not act for Boone in executing the sublease and promissory note. Finally, unlike the situation in Gauntt v. Commissioner,supra, no changes in the terms of the sublease or the amounts of advance royalties were made between the time the sublease was first signed and the time when all the units of partnership interest were sold, which demonstrates that Boone considered itself bound by the sublease. The fact that the investors in Boone did not join the partnership until after October 29, 1976, is immaterial because it is the partnership, the party to the sublease, rather than the partners, which must be bound prior to October 29, 1976. Elkins v. Commissioner,81 T.C. 669, 677 (1983). We find the facts in Elkins, upon which petitioners rely, to be much closer to the facts in the present case. There, the Court decided that a partnership which executed a lease, rather than the partners, was the party bound to pay or accrue the advanced royalties for purposes of the effective date of amended section 1.612-3(b)(3), Income Tax Regs. In so *97 holding, the Court assumed that the partnership was bound by a sublease entered into prior to October 29, 1976, although the partnership did not actually pay or accrue the advanced royalties until December 1976 when the investors joined as limited partners. In Elkins, as in the present case, the partnership was formed and entered into the sublease on October 27, 1976. The royalty payments were made in the form of a non-negotiable, non-interest-bearing note due December 15, 1976, and a nonrecourse promissory note. The short term note was paid out of the proceeds of the sale of the partnership interests. The investors who became limited partners joined the partnership by December 15, 1976. The fixed royalty paid in advance was subject to recoupment by the partnership from the production of coal. These provisions are substantially similar to the sublease provisions between Boone and LJP, although here the down payment was made in cash and was due on December 31, 1976. All these factors lead us to the conclusion only assumed in Elkins: Boone was under a binding obligation to LJP prior to October 29, 1976, to pay or accrue the advanced royalties. We are not persuaded by respondent's *98 argument that because LJP established Boone and Mr. Landesman was its initial limited partner, the sublease between Boone and LJP did not represent a binding obligation. It is true that an agreement reached among related parties must be scrutinized more closely in order to determine whether its terms are binding; but terms supplied by related parties are not of necessity any less binding than those reached stiffly at arm's length. We further hold that the "not substantial or were illusory" test found in T.D. 7523, supra,[6] *99 applies only in the case where advanced royalties are required pursuant to a written contract to execute a lease requiring such payments. The sentence after the one setting out the two scenarios in which the amendment will be inapplicable (clause (i) and (ii)) starts out, "For purposes of clause (ii) * * *". The next sentence begins, "In addition, a contract will in no event * * *".These references to "clause (ii)" and "the contract" lead to the conclusion that the "illusory" obligation involves a contractual obligation to execute a lease and not to the obligation in the lease itself. Based on the uncontroverted facts before us, we conclude that Bonne fits within the exception of clause (i) of T.D. 7523, supra, and was under a binding obligation to pay advanced royalties under the sublease with *100 LJP prior to October 29, 1976. An appropriate order will be issued.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. These motions were assigned for hearing, consideration and ruling thereon pursuant to Delegation Order No. 8 of this Court, 81 T.C. XXV (1983).↩
3. Mr. Zegeer was a partner in Highboro partnership, which was a limited partner in Boone.↩
4. Respondent admits in his motion that, "Pursuant to the SUBLEASE, the BOONE partnership (sublessee) was obligated to pay an advanced royalty against the tonnage royalty of $5,025,000 on or before December 31, 1976." Thus, the terms of the sublease are not at issue.
5. Rule 121(b) allows us to make a partial summary adjudication not disposing of all the issues in a case. Here, we are making a determination relative only to Boone's obligation to pay advanced royalties under the sublease. Respondent's motion, if granted, however, would be virtually dispositive of this case because the only remaining item is the $153 disallowed investment tax credit. If amended sec. 1.612-3(b)(3), Income Tax Regs., applies to Boone, then Boone is not eligible for any advanced royalty payment deduction in 1976 when it admittedly did not produce and sell any coal. Petitioners ask in their cross motion for a judgment that the obligation Boone entered into under the sublease to pay advanced royalties was binding prior to October 29, 1976. Still to be resolved upon the grant of their motion are other grounds respondent has asserted for disallowing the partnership loss deduction, including (1) that petitioners have failed to show that the partnership incurred a loss; (2) that the venture was a trade or business; (3) that petitioners have any basis in the partnership; (4) that there is economic substance to the nonrecourse note; and (5) the presence of a profit objective by Mr. Zegeer in his investment in Boone.
6. For the sake of convenience, we again reproduce the language at issue, which we also cited in the text, supra.
* * * [T]he amendment will not apply if prior to October 29, 1976 (i) the payment of the advanced royalties was required pursuant to a mineral lease which was binding upon the party who in fact pays or accrues such royalties, or (ii) the payment of the advanced royalties was required by reason of a written contract which bound the party who in fact pays or accrues such royalties to execute a lease requiring the payment of the advanced royalties. For purposes of clause (ii) of the preceding sentence, the party must establish, to the satisfaction of the Secretary or his delegate, that under all the facts and circumstances the contractual obligation to pay the advanced royalties was binding upon him prior to that date. In addition, a contract will in no event be considered to be binding upon the party if the obligations imposed on the party prior to October 29, 1976, were not substantial or were illusory. [T.D. 7523, 1978-1 C.B. 192↩, 193-194.]