ESTATE OF MARIE SWIFT SPIEL, Deceased, ROBERT E. SPIEL, JR., AND RICHARD A. MOORE, JR., Co-Trustees, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Spiel v. Commissioner
Docket No. 10740-88
United States Tax Court
T.C. Memo 1989-532; 1989 Tax Ct. Memo LEXIS 532; 58 T.C.M. (CCH) 266; T.C.M. (RIA) 89532; September 27, 1989
Kimball R. Anderson, Thomas B. Donovan, Crane C. Hauser, and Mary T. Alred for the petitioners. Donna Hansberry, for the respondent. *533 BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This matter was assigned pursuant to the provisions of section 7443A(b) of the Internal Revenue Code and Rules 180, 181 and 183. [1] It is before the Court on petitioners' Motion for Partial Summary Judgment pursuant to Rule 121. Marie Swift Spiel (decedent) died on June 5, 1984. Decedent was a resident of Lake County, Illinois, at the time of her death. Petitioners are co-trustees of the Marie Swift Spiel Trust dated March 5, 1977 (hereafter 1977 Trust) and resided in Chicago, Illinois, and Mendham, New Jersey, when the petition herein was timely filed. Petitioners filed the Federal estate tax return for the Estate of Marie Swift Spiel in Kansas City, Missouri. Respondent determined a deficiency in petitioners' estate tax liability in the amount of $ 538,375.17. Substantially all of respondent's determinations are contested in the petition. [2] Further, petitioners on January 11, 1988, filed a claim for refund in the amount of $ 761,761.93 which was rejected and as to which they claim an overpayment in this Court. *534 Petitioners seek partial summary judgment in regard to four issues: (1) includability in the gross estate of the value of the 1938 Spiel Trust, (2) whether administrative expenses incurred in the maintenance of Lake Forest real property are deductible from the gross estate, (3) the deductibility of attorneys' fees, and (4) the right to a credit for state death taxes. At the hearing on the motion, respondent conceded (1) that petitioners will be entitled to deduct attorneys' fees in the amount of $ 46,000 as well as fees totaling $ 75,000 previously allowed, and in addition reasonable fees paid and supported by affidavit in connection with this case, and (2) that petitioners are entitled to credit for state death taxes paid, the amount of which cannot be computed until this case is decided. Both of these items will be determined in connection with the Rule 155 computation. After respondent's concessions, we are left to decide whether partial summary judgment may be granted on the first two questions. Rule 121(b) provides that a motion for summary judgment is to be granted if "there is no genuine issue as to any material fact and * * * a decision may be rendered as a matter of *535 law." The burden of persuasion is on the moving party, and we are required to view the factual materials and inferences to be drawn therefrom in the light most favorable to the party opposing the motion. Greene v. Commissioner, 88 T.C. 376, 377 (1987); Casanova Co. v. Commissioner, 87 T.C. 214, 217 (1986). Respondent opposes the motion, contending that genuine issues as to material facts exist in regard to both issues. The 1938 Spiel Trust
On December 24, 1938, decedent purchased 500 shares of Wedron Silica Company (Wedron) at $ 180 per share for a total of $ 90,000, from the Richard Fitzgerald Testamentary Trust (Fitzgerald Trust) paying $ 9,000 in cash and executing a promissory note in the amount of $ 81,000. Under the promissory note decedent was required to make 15 annual installment payments of $ 5,400 each until the full purchase price was paid as well as semi-annual interest payments at the rate of 4 percent per annum on the unpaid principal balance. Decedent had the right to prepay principal installments. She pledged the 500 shares of Wedron to the Fitzgerald Trust as security for the $ 81,000 promissory note. Decedent's father, *536 Gustavus F. Swift (Mr. Swift), and The First National Bank of Chicago were co-trustees of the Fitzgerald Trust. The agreement between decedent and the Fitzgerald co-trustees was in writing. On December 27, 1938, 3 days after decedent purchased the 500 shares of Wedron, decedent as donor and her father, Mr. Swift, as trustee, established the Spiel Trust. Mr. Swift was the trustee and decedent was the primary beneficiary. The Trust agreement provided that Mr. Swift had the right, in his sole discretion, to accumulate net income of the Spiel Trust or to distribute the income to decedent during her lifetime. Upon Mr. Swift's death, decedent had the right to request in writing distribution of net income to her by the successor trustees. Any net income not distributed to decedent was added to trust principal. Upon decedent's death, Mr. Swift or his successor trustee was required to distribute to decedent's lineal descendants such amounts of the Spiel Trust net income as they requested in writing, any nondistributed net income to be added to trust principal. The trust was to terminate 21 years after the death of the last survivor of decedent's brother, nephew, and sisters. On December 28, 1938, Mr. *537 Swift and his wife each contributed $ 5,000 cash to the trust. On December 29, 1938, 5 days after decedent purchased the 500 shares of Wedron and 2 days after she established the Spiel Trust, decedent transferred the Wedron shares to the Spiel Trust under a written agreement with the trustee, her father Mr. Swift, for $ 90,000, receiving as consideration $ 9,000 in cash and the assumption of her obligation to pay the promissory note to the Fitzgerald Trust. Thereafter, utilizing dividend income from the Wedron shares, the Spiel Trust made the principal and interest payments due on the promissory note to the Fitzgerald Trust. The promissory note indicates it was fully paid on December 26, 1944. Mr. Swift died on October 28, 1943. Arthur Young and Company, accountants, audited the Spiel Trust as of October 28, 1943, and issued their report to the successor trustees on February 28, 1944. Their audit report indicated the following balance sheet: Cash in bank
$ 4,412.49
Wedron stock (no market price
90,000.00
available at 10/28/43)
$ 94,412.49
Notes payable
$ 25,400.00
Capital
Original gift to Trust
$ 10,000.00
Undistributed income to 10/28/43
$ 59,012.49
$ 69,012.49
$ 94,412.49
*538 The audit report included a statement of income and expenses and distributions to the beneficiary. All income with a minor exception consisted of dividends received on the Wedron stock as follows: Year
Amount
1939
$ 17,000
1940
15,500
1941
17,500
1942
15,000
Year ended 10/28/43
7,500
Total
$ 72,500
Expenses shown were interest on the promissory note for a total of $ 9,870.64. Distributions to the beneficiary were shown in 1941 ($ 2,575.20) and 1942 ($ 1,181) for a total of $ 3,756.20. The report did not indicate that any federal income taxes were paid by the trust on the Wedron dividend income. Lastly, the audit report indicated that of the original $ 81,000 principal amount of the note, $ 55,600 in payments had been made and a $ 25,400 principal balance remained. Prepayments totaling $ 34,000 were made in addition to regular payments. Decedent died on June 5, 1984. As co-trustees under the decedent's 1977 Trust, petitioners filed decedent's Federal estate tax return. Petitioners included the full value of the Spiel Trust in decedent's gross estate. Subsequently, petitioners filed a Claim for Refund, arguing that the Wedron stock had been transferred *539 to the Spiel Trust for full and adequate consideration in money or money's worth and thus the value of the trust was not includable in decedent's gross estate. In the Notice of Deficiency respondent, in rejecting the claim for refund, determined that the percentage of the Spiel Trust includable in decedent's gross estate was 89.01 percent, rather than zero as petitioners claim. The parties agree that the value of the trust is includable in decedent's gross estate under the provisions of section 2036(a) of the Code, unless decedent transferred the Wedron stock to the Spiel Trust for an adequate and full consideration in money or money's worth. See also sec. 2043. We thus must look to the circumstances of the transfer made more than 50 years ago. Respondent alleges that the burden is on petitioners to prove that the transfer by decedent was for an adequate and full consideration in money or money's worth, and that they have not sustained such burden. Respondent points out that the records of the Spiel Trust, as of October 18, 1943 (the date of death of trustee Gustavus Swift), indicate that the trust had received Wedron dividends totaling $ 72,500 but that there was no indication *540 the trust had filed tax returns or paid Federal income taxes on these amounts. Respondent, in his objection, argues: The absence of any federal income tax due from the Trust strongly suggests that the Trust did not treat the dividends received from Wedron as income. If the Trust did not treat the Wedron dividends as Trust income, then the obligation due to the Fitzgerald Trust, while paid by the Trust, could not have been paid with trust funds. Therefore, because the Fitzgerald Trust note was not paid with income from the Trust, it is incorrect to conclude that the Trust assumed Spiel's obligation to pay the promissory note. Respondent goes on to argue: No affirmative evidence has been presented indicating whether Spiel included the Wedron dividend income on her federal income tax returns and deducted interest payments made on the promissory note. However, no evidence has been presented showing that the Trust included income from Wedron dividends and deducted interest payments made on any federal income tax returns it may have filed. Who made the payments on the debt has not been established. Therefore, because the substantive payor of the promissory note has not *541 been established, summary judgment is inappropriate with regards to this issue. Further, respondent urges that the fact that decedent transferred the Wedron stock for the same consideration for which she purchased it, does not go to show that her transfer was for an adequate and full consideration in money or money's worth in view of the fact that the transfers were between family members. In the hearing on petitioners' motion, respondent argued that decedent did not receive a release from her obligation on the promissory note "because of the fact that it appears at the time from the evidence that she in fact paid the income taxes with regard to the trust income." Respondent provided no factual data to support this position, merely arguing that it can be inferred from the trust financial statement which showed that no Federal income taxes had been paid by the trust from 1938 through at least 1943. Respondent thus makes the first assumption that there was a trust income tax liability and goes on to further assume that since the trust did not make tax payments then decedent must have made the payments on the promissory note. Petitioners contend that the value of the Wedron *542 stock was $ 90,000, the amount decedent paid for it, on the dates decedent acquired it and then transferred it to the Spiel Trust. Second, petitioners contend that the original documents prove that decedent received $ 90,000 for her transfer of Wedron stock, payable $ 9,000 in cash and through the Spiel Trust's assumption of her obligation to pay $ 81,000 to the Fitzgerald Trust. Summary judgment may be granted where it is shown that "there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). A material fact is one that is relevant to an element of a claim that might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Electrical Service v. Pacific Electrical Contractors, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the burden of proving that there is no material fact in dispute. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982); Espinoza v. Commissioner, supra at 416. In essence, the Court must ask whether there is *543 need for a trial to resolve any genuine and controlling factual issues that can be properly answered only by a finder of fact. If there are controlling factual issues that may reasonably be resolved in favor of either party, summary judgment is not appropriate. Anderson v. Liberty Lobby, Inc., supra at 250. In determining whether summary judgment may be granted, all facts and inferences must be viewed in the light most favorable to the party opposing the motion. Anderson v. Liberty Lobby, Inc., supra at 251; Jacklin v. Commissioner, supra at 344; Espinoza v. Commissioner, supra at 416. In opposing a motion for summary judgment, the opposing party must go beyond the mere pleadings and refer the Court to specific facts contained in answers to interrogatories, depositions, admissions, or any other acceptable materials, together with affidavits, if any, that establish the presence of a genuine issue of material fact such that judgment cannot be rendered as a matter of law. Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Respondent has failed to do so here. Respondent's *544 case against partial summary judgment rests upon assumption piled upon assumption. Respondent assumes that because the Spiel Trust did not pay income tax on the dividends one can assume that taxes were due, one can assume that the dividends were treated as the income of decedent (and hence distributed to her) from which one can assume that the obligation on the promissory note due the Fitzgerald Trust was not assumed by the Spiel Trust, and accordingly one can assume that the note was paid not by the Spiel Trust, but by decedent utilizing the Spiel Trust as a mere conduit. Respondent, we can only assume, would also have us infer that the audit statement indicating distributions of $ 3,756.20 to the beneficiary was erroneous and should have indicated that all principal and interest payments on the note were distributions to the beneficiary. We do not intend to make such assumptions when all the historical documents state otherwise. Respondent has not suggested any evidence available other than that now before the Court. We acknowledged in Gauntt v. Commissioner, 82 T.C. 96, 101 (1984), that we review the inferences to be derived from the materials in the light most *545 favorable to the party opposing the motion. We went on to state, however, as follows: On the other hand, a motion for summary judgment may not be defeated by the mere allegation that there is a dispute over a material fact; the adverse party must set forth specific facts showing that there is a genuine issue for trial. * * * The only inference we are willing to draw from the facts presented to this Court is that the Spiel Trust may not have paid Federal income tax on the Wedron dividends, if in fact any taxes were due. Although we asked respondent at the hearing on the motion if tax rates for the trust had been checked to see if any taxes would have been due, respondent had failed to do so. Further, we gave respondent the opportunity to file a supplemental objection on the question of the adequacy of consideration received by decedent. Respondent contented himself with an affidavit of the revenue officer which stated that he had requested all information surrounding the transfer of the Wedron stock into the trust and its valuation, and had been advised by representatives of the estate that they were unable to supply the requested 50-year old information, so that the agent was *546 unable to make a determination of fair market value. We see no reason to believe that a trial in this matter would produce any additional evidence relevant to this issue. We now consider whether under these facts it is appropriate to grant petitioners' motion for partial summary judgment. We agree with respondent that intra-family transactions should be subjected to close scrutiny. So viewing the uncontroverted facts herein, we see that decedent acquired the Wedron shares from co-trustees, one of whom was her father and the other the First National Bank of Chicago, under a written agreement for a stated consideration of $ 90,000, payable $ 9,000 in cash and the balance by $ 81,000 promissory note, secured by the stock certificates. A few days later decedent sold the same shares to her father as trustee of the Spiel Trust, for precisely the same consideration. Audited records of the Spiel Trust indicate it received the Wedron dividends and that it made the interest and principal payments on the promissory note it had assumed. Further, accounting by outside auditors indicated that the dividends received, shown as income to the trust, were not distributed to decedent, nor were *547 they shown as set aside for her account. Under these circumstances, we agree with petitioners that decedent transferred the shares into the Spiel Trust for full and adequate consideration in money or money's worth. Accordingly, partial summary judgment in favor of petitioners will be granted on this issue. Administration Expenses
Administration expenses in regard to real property at Lake Forest, Illinois, in the amount of $ 54,202.70 were claimed as a deduction on the estate tax return and disallowed in full in respondent's determination. Decedent held a general power of appointment over a marital trust (Trust A) created by her husband Robert E. Spiel under a trust instrument dated March 2, 1982, as amended. Robert E. Spiel predeceased decedent. On the date of decedent's death, June 5, 1984, the sole asset of Trust A was a 77.5948 percent interest in real estate located at 270 East Westleigh Road, Lake Forest, Illinois (Lake Forest property). Petitioners included 77.5948 percent of $ 675,000, or $ 523,764.90, in the decedent's gross estate pursuant to section 2041. Respondent determined that decedent's percentage interest was valued at $ 756,549.30. The valuation issue *548 is not a part of the motion for partial summary judgment. Decedent did not exercise her general power of appointment over Trust A. Thus, upon her death the property of Trust A poured over into a second trust, Trust B. Trust B was to be divided per stirpes into trusts for living descendants of decedent's husband, and each trust set aside was to be immediately distributed to such descendant other than decedent's son whose interest remained in trust. Petitioners claimed 77.5948 percent of the total expenses incurred on the real property as administration expenses. The expenses were as follows: Commonwealth Edison
$  5,054.25
Illinois Bell
834.91
Sewer & Water
515.74
Garden & Yard Maintenance
11,742.99
Pool Maintenance
7,317.14
Exterminator
254.29
Lakeside Foods
1,210.00
Laundry & Dry Cleaning
1,120.50
House Cleaning
50.00
Heating Fuel & Furnace
600.45
Staff Expenses
8,651.82
Insurance
3,282.26
Security System
3,589.00
Miscellaneous Repairs
9,979.35
$ 54,202.70
Petitioners argue that these expenditures are deductible as administration expenses or, alternatively, should go to reduce the valuation of Trust A in decedent's estate. Respondent, *549 on the other hand, takes the position that these expenditures (the amount of which he does not contest) were not incurred in connection with settling decedent's interest in the property and vesting good title to the property in the beneficiaries. Respondent argues that title to the property in Trust A passed by operation of law to Trust B, and accordingly petitioners had no obligation to conserve it in order to pass good title. Respondent also argued at the hearing that these funds were expended over a 2-year period, and there was no reason to believe that 2 years were required to incur such expenses under the pour-over trust circumstances here. We hold that a genuine issue of material fact exists regarding the deductibility of these claimed expenses and/or the reduction in value of Trust A. Accordingly, we deny petitioners' motion for partial summary judgment in this regard. Attorneys' Fees and State Death Tax Credits
Due to concessions, these items will be computed in connection with a Rule 155 computation once the factual issues remaining in this matter have been decided. To reflect the foregoing, partial summary judgment will be granted in regard to the nonincludability *550 of the Spiel Trust in the gross estate, and denied in regard to administration expenses. An appropriate order will be issued. Footnotes
1. Unless otherwise specified, all section references are to the Internal Revenue Code of 1954, as amended and in effect as of the date of the decedent's death, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners do not contest items totaling $ 14,611.96.↩