PATRICK N. CHIDNESE AND R. A. CHIDNESE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chidnese v. Commissioner
Docket No. 27818-81.
United States Tax Court
T.C. Memo 1984-612; 1984 Tax Ct. Memo LEXIS 62; 49 T.C.M. (CCH) 151; T.C.M. (RIA) 84612; November 21, 1984. David E. Wasserstrom, for the petitioners. Alan E. Cobb, for the respondent. DAWSON MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency
1977
$76,590
1978
5,051 After concessions by petitioners, the issue remaining for decision is what amount, if any, is petitioner, as a limited partner, entitled to deduct as his distributive share of the loss claimed by Vanderpoole Associates, Ltd., a limited partnership. Resolution of this issue is dependent upon whether the partnership is entitled to a deduction in 1977 or 1978 for (1) advanced minimum royalties, (2) amounts paid [1] to the general partner, or (3) other miscellaneous business expenses. *64 This case was submitted fully stipulated pursuant to Rule 122. [2] The stipulation of facts and joint exhibits are incorporated herein by this reference. Patrick N. and R. A. Chidnese [3] (petitioners), husband and wife, were legal residents of Plantation, Florida at the time they filed their petition in this case. Petitioners filed timely joint Federal income tax returns for 1977 and 1978 with the Internal Revenue Service Center in Chamblee, Georgia. Petitioner held a 8.2 percent interest in Vanderpoole Associates Ltd. (Vanderpoole or the partnership) as a limited partner. Vanderpoole was formed under the laws of the state of Florida on December 28, 1977. Vanderpoole filed its tax returns according to the accrual method of accounting. The partnership was formed ostensibly to invest in coal mining in Laurel County, Kentucky. Richard D. Kaplan was the general partner of Vanderpoole. *65 Vanderpoole leased some mining property from Williamsburg Associates (Williamsburg), a Florida general partnership, for twenty years with an option to renew. Vanderpoole was to pay a nonrefundable royalty to Williamsburg of $120,000 per year. Vanderpoole paid Williamsburg an advance for the first 15 years of annual royalties of $1,800,000, $410,000 of which was in cash. The remainder of $1,390,000 was due on December 31, 1989, and was represented by a nonrecourse promissory note with payments due only if coal was mined and sold by Vanderpoole. Vanderpoole also entered into a sales contract with London Brokerage Company, which agreed to buy all the coal that Vanderpoole had to sell for $20.75 per ton. The partnership never acquired a mining permit or entered into a mining contract to remove coal from the leased property. No coal was ever mined on the premises of the leased property. Vanderpoole reported no income from the sale of coal during 1978. But it reported losses of $1,838,214.56 in 1977 and $92,707.49 in 1978 on its partnership returns.The loss in 1977 included the $1,800,000 payment for advanced royalties, $10,000 in guaranteed payments to partners of *66 Vanderpoole, and $38,214.56 of miscellanous business expenses. Vanderpoole's loss in 1978 included an $83,400 payment of interest and $10,307.49 of miscellaneous business expenses. Petitioner claimed a deduction on his Federal income tax returns in 1977 of $150,733.63 and in 1978 of $7,602.01 for his distributive share of Vanderpoole's losses. Respondent disallowed these deductions. [4]
In disallowing the claimed deductions, respondent relies upon section 1.612-3(b)(3), [5] Income Tax Regs., as amended. Respondent contends that the partnership is not allowed a deduction for advanced minimum royalties because it has not met *67 the requirements of section 1.612-3(b)(3), Income Tax Regs. Respondent argues that under the provisions of the lease with Williamsburg, the partnership was required to make payments on the nonrecourse note only if coal was mined or sold. Respondent contends that section 1.612-3(b)(3), Income Tax Regs., requires that in order to be deductible, minimum royalty payments must be required to be paid at least annually. In the alternative, respondent contends that the partnership is not entitled to a deduction for advanced royalties or for any of its other claimed deductions because it had no bona fide intention of making a profit from its coal mining venture. *68 Petitioner's sole contention is that respondent's determination that the royalty payment is not deductible is incorrect because section 1.612-3(b)(3), Income Tax Regs., was invalidly adopted. Petitioner argues that the regulation is invalid because of the following: (1) respondent failed to comply with section 553 of the Administrative Procedure Act; (2) administrative practice reflected in the regulation prior to its 1977 amendment had acquired the force of law and could not be altered without congressional action by virtue of the legislative reenactment doctrine; and (3) respondent failed to exercise reasonable discretion in applying the amended regulation retroactively. Accordingly, petitioner contends that the royalty payment is deductible under the prior provisions of section 1.612-3(b)(3), Income Tax Regs.We disagree with petitioner. On October 29, 1976, the Internal Revenue Service issued News Release IR-1687 announcing that proposed regulations under section 612, [6] which would modify the treatment of advanced royalties under mineral leases entered into as of that date, would be published in the Federal Register. A copy of the proposed regulations accompanied *69 the release. The supposed effect of the amendment was that lump-sum advanced royalties could now be deducted only in the year of sale of the mineral product with respect to which the royalty was paid. In the event that coal was sold before production, a taxpayer would have to wait until the coal was actually mined before deducting advanced royalties. In two earlier revenue rulings, the Service had concluded that lump-sum royalties were deductible when paid or accrued. Rev. Rul. 70-20, 1970-1 C.B. 144, and Rev. Rul. 74-214, 1974-1 C.B. 148. The news release announced the suspension of these rulings. In the November 2, 1976, Federal Register, a notice of proposed rulemaking containing the same proposed regulation that accompanied News Release IR-1687 was published. The service announced in its November 15, 1976, issue of the Internal Revenue Bulletin that the said amendment to the regulation was proposed, that hearings would be held on November 30, 1976, and that the last date for submitting comments would be November 23, 1976. *70 The final version of the regulation was filed on December 14, 1977 and published on December 19, 1977, in T.D. 7523, 42 Fed. Reg. 63640, 1978-1 C.B. 192. This version was substantially the same as that published in News Release IR-1687. Wing v. Commissioner,81 T.C. 17, 24 (1983). On the same day that T.D. 7523 was released the Service revoked Rev. Rul. 70-21 and Rev. Rul. 74-214 in Rev. Rul. 77-489, 1977-2 C.B. 177. This Court has on several prior occasions confronted all of petitioner's arguments and rejected them.In Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984), this Court held that the amendment of section 1.612-3(b)(3), Income Tax Regs., was valid. We held that respondent did comply with section 553 of the Administrative Procedure Act and that amending section 1.612-3(b)(3), Income Tax Regs., retroactively pursuant to section 7805(b) was not an abuse of discretion. We held further that the legislative reenactment doctrine *71 did not bar respondent from amending the regulation. Our holding in Wendland,supra was followed in Wing v. Commissioner,supra;Surloff v. Commissioner,81 T.C. 210 (1983); and Elkins v. Commissioner,81 T.C. 669 (1983). After an examination of the facts before us, we conclude that opinions in the cases cited above are controlling. Moreover, the partnership was formed on December 28, 1977, nine days after the final version of section 1.612-3(b)(3), Income Tax Regs., was published in the Federal Register, and morethan a year after the proposed regulations were published by the Internal Revenue Service in a news release on October 29, 1976. Hence, the partnership had ample time to structure its transaction. Accordingly, petitioner's contention the section 1.612-3(b)(3), Income Tax Regs., was invalidly issued must be rejected. Based upon our determination that section 1.612-3(b)(3), Income Tax Regs., was validly amended, we hold that petitioner is not entitled to a deduction for advanced minimum royalties in 1977 and 1978. The regulation, as amended, allows a current deduction for advanced royalties *72 paid or accrued "as a result of a minimum royalty provision." A minimum royalty provision is defined in the regulation as follows: For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. [Emphasis supplied.] In the instant case the lease agreement provided for a nonrefundable minimum royalty for each year of the lease. Minimum royalties for the first fifteen years in the amount of $1,800,000 were paid upon execution of the lease, $410,000 in cash and $1,390,000 by a nonrecourse promissory note. However, the note was not due in full until December 31, 1989, and payments were required only if coal was mined and sold. In Wing v. Commissioner,81 T.C. 17 (1983), the petitioner was denied a deduction for advanced minimum royalties involving a similar lease provision. In Wing, the lease provided for an advanced minimum royalty of $60,000, payable $6,000 a year for ten years. Payment *73 was made upon execution of the lease in the form of $10,000 in cash plus a nonrecourse note of $50,000. The note was due in full ten years after the lease was executed. This Court in Wing held that the requirements of section 1.612-3(b)(3), Income Tax Regs., were not met because there was no requirement that royalty payments be made on at least an annual basis since the note was not due until ten years from the date of the lease. Wing v. Commissioner,81 T.C. at 40-42. In accordance with this Court's opinion in Wing, petitioner in this case has failed to satisfy the requirements of section 1.612-3(b)(3), Income Tax Regs., since the partnership is not required to make royalty payments on an annual basis. Payments on the nonrecourse note were contingent upon the mining and sale of coal. Accordingly, we sustain respondent on this issue. Petitioner has the burden of proof in regard to the final two deductions in this case for amounts paid to the general partner and for miscellaneous business expenses. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). To satisfy this burden, petitioner must substantiate the amounts of the deductions *74 claimed. Hradesky v. Commissioner,65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).See Fellrath v. Commissioner,T.C. Memo. 1981-476. Petitioner has not contested respondent's disallowance of these deductions, nor has he offered and evidence to substantiate them. Therefore, petitioner has either conceded these deductions or has failed to satisfy his burden of proof. Accordingly, we sustain respondent on these issues. Decision will be entered for respondent.
Footnotes
1. The use of the terms "paid" or "payment" herein is for convenience only and is not intended to represent any conclusion concerning the true nature of the transaction at issue.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. With respect to the items at issue herein, R. A. Chidnese is a petitioner only because shd filed a joint return with her husband. References to petitioner are intended to refer to Patrick N. Chidnese.↩
4. Respondent made some additional adjustments in petitioner's Federal income tax returns for 1977 and 1978. These include a $33,228 overstatement of a claimed loss of $60,444 in Forest Run Limited, a real estate partnership. Respondent also made adjustments in petitioner's deductions for the following: (1) home office expenses in 1977 of $800 and in 1978 of $800; (2) entertainment expenses in 1977 of $100 and in 1978 of $350; and (3) automobile expenses in 1977 for $1,300 and in 1978 for $1,350. Petitioner concedes all of these adjustments.↩
5. Section 1.612-3(b)(3), Income Tax Regs., as amended, was adopted on December 14, 1977, retroactive to October 29, 1976, and provides in part, as follows: (b) ADVANCED ROYALTIES. * * * * * * (3) The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * * The provisions of this subparagraph do not allow as deductions from gross income amounts disallowed as deductions under other provisions of the Code, such as section 461 (relating to general rule for taxable year of deduction), section 465 (relating to deductions limited to amount at risk in case of certain activities), or section 704(d) (relating to deductions limited to amount at risk in case of certain activities), or section 704(d) (relating to limitation on allowance to partners of partnership losses). In its prior form, sec. 1.612-3(b)(3), Income Tax Regs., read, in part, as follows: (3) The payor, at his option, may treat the advanced royalties so paid or accrued in connection with mineral property as follows: (i) As deductions from gross income for the year the advanced royalties are paid or accrued, or (ii) As deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid, is sold.↩
6. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in question.↩