A. ROBB GIBSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gibson v. Commissioner
Docket No. 20842-80.
United States Tax Court
T.C. Memo 1984-616; 1984 Tax Ct. Memo LEXIS 57; 49 T.C.M. (CCH) 164; T.C.M. (RIA) 84616; November 26, 1984. David E. Wasserstrom, for the petitioner. Kenneth J. Rubin, for the respondent. DAWSON MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined a deficiency of $38,628 in petitioner's Federal income tax for the taxable year 1976. The issue for decision is what amount, if any, is petitioner, as a limited partner, entitled to deduct as his distributive share of the loss claimed by Whitley Associates, Ltd., a limited partnership. Resolution of this issue is dependent upon whether the partnership *59 is entitled to a deduction in 1976 for (1) advanced minimum royalties, (2) amounts paid [1] to the general partner, or (3) other miscellaneous business expenses. This case was submitted fully stipulated pursuant to Rule 122. [2] The stipulation of facts and joint exhibits are incorporated herein by this reference. A. Robb Gibson (petitioner) was a legal resident of Miami Lakes Florida at the time he filed the petition in this case. Petitioner filed a timely Federal income tax return for 1976 with the Internal Revenue Service Center in Chamblee, Georgia. On December 28, 1976, petitioner became a limited partner in Whitley Associates, Ltd. (Whitley). To become a limited partner, petitioner was required to have a net worth of at least $150,000 or more, and an annual income that would be subject to tax in the Federal income tax bracket of at least 50 percent. Whitley filed a limited partnership agreement on December 31, 1976, in *60 Florida. Whitley elected to be taxed on the accrual method of accounting. Whitley was organized ostensibly to invest in coal mining ventures. Dominic Panerali (Panerali) was the general partner of Whitley. Panerali was a certified public accountant in Miami, Florida. Under the terms of Whitley's limited partnership agreement, Panerali, as the general partner of Whitley, was to receive five cents for every ton of coal mined and sold by Whitley plus a guaranteed payment of $30,000 per year. On December 30, 1976, Whitley leased one hundred and fifty acres of coal property called the "Mitchell Tract" from Corbin Associates (Corbin). Corbin was a partnership formed by another partnership, whose partners were Johnny Medlin, Dom Meffe and Thomas E. Rogers (Medlin et al.). Medlin et al. had purchased the Mitchell Tract on December 23, 1976, for $80,000. Medlin et al. then conveyed the Mitchell Tract including coal mining rights for $200,000 to Dom Meffe as trustee for Corbin. Under the terms of the lease, Whitley, the lessee, was required to pay a royalty to Corbin, the lessor, of 50 cents for every ton of coal mined. Additionally, whether or not any coal was mined, Whitley *61 was to pay a minimum annual royalty of $40,800. The lease extended for a period nine days less than twenty-five years. Therefore, Whitley's minimum annual royalty for twenty-five years amounted to $1,020,000. The total minimum annual royalty was required to be paid upon execution of the lease by a nonrecourse note for $1,020,000. $200,000 in cash was delivered, to either be credited to the payments for the last three years of the lease, or applied to principal and interest if Whitley failed to pay the note. Corbin could also foreclose on Whitley's interest under the lease if the $200,000 was insufficient to cover the amount in default. The note was to be repaid in annual installments of $87,257.15, which included principal and interest. Whitley never made any payments on the note other than the original $200,000. On the same day that the lease was executed, Whitley entered into a sales contract with Johnny Medlin (Medlin), a partner in Corbin. Whitley agreed to pay Medlin $14 per ton to mine coal on the Mitchell Tract. Whitley also contracted with Woodbine Associates to sell the mined coal for $15.95 a ton. Medlin never mined nor attempted to mine coal on the Mitchell *62 Tract. Whitley did not sell any coal in 1976 and reported zero gross receipts on its 1976 partnership return. Whitley also reported a loss of $1,060,000 based upon deductions of $1,020,000 for payment of an advanced royalty by nonrecourse note, $30,000 to its general partner, and $10,000 in consulting fees. Whitley reported losses on its partnership returns of $54,206.99 in 1977 and $53,635.30 in 1978. Whitley's gross receipts were $39,408 in 1977 and none in 1978. Petitioner claimed a deduction of $77,512.50 on his 1976 Federal income tax return as his distributive share of Whitley's partnership loss. Respondent disallowed this deduction. In disallowing the deduction, respondent relies upon section 1.612-3(b)(3), Income Tax Regs., as amended. [3] Respondent contends that under section 1.612-3(b)(3), Income Tax Regs., no deduction for advanced royalties is allowable to the partnership for the taxable year 1976 since no coal was mined or sold in 1976. Respondent contends further that no deduction is allowable because the partnership's minimum annual royalty provision did not require that a substantially uniform amount of royalties be paid over the life *63 of the lease or for a period of at least twenty years. See sec. 1.612-3(b)(3), Income Tax Regs. In the alternative, respondent contends that if this Court finds that section 1.612-3(b)(3), Income Tax Regs., is inapplicable, any deduction for advanced royalties should not include the amount of the nonrecourse note because it was so speculative and contingent that it lacked economic substance. In addition, respondent contends that the partnership is not entitled to any of the other deductions claimed on its 1976 return because it had no bona fide intention of making a profit from its coal mining venture. *64 Petitioner's sole contention is that respondent's determination that the royalty payment is not deductible is incorrect because section 1.612-3(b)(3), Income Tax Regs., was invalidly adopted. Petitioner argues that the regulation is invalid because (1) respondent failed to comply with section 553 of the Administrative Procedure Act; (2) administrative practice reflected in the regulation prior to its 1977 amendment by T.D. 7523 had acquired the force of law and could not be altered without Congressional action by virtue of the legislative reenactment doctrine; and (3) respondent failed to exercise reasonable discretion in applying the amended regulation retroactively. Accordingly, petitioner contends that the royalty payment is deductible under the prior provisions of section 1.612-3(b)(3), Income Tax Regs.
On October 29, 1976, the Internal Revenue Service issued News Release IR-1687 announcing that proposed regulations under section 612 [4] which would modify the treatment of advanced royalties under mineral leases entered into as of that date, would be published in the Federal Register. A copy of the proposed regulations accompanied the release. The supposed *65 effect of the amendment was that lump-sum advanced royalties could be deducted only in the year of sale of the mineral product with respect to which the royalty was paid. In the event that coal was sold before production, a taxpayer would have to wait until the coal was actually mined before deducting advance royalties. In two earlier revenue rulings, the Service had concluded that lump-sum royalties were deductible when paid or accrued. Rev. Rul. 70-20, 1970-1 C.B. 144, and Rev. Rul. 74-214, 1974-1 C.B. 148. The news release announced the suspension of these rulings. In the November 2, 1976, Federal Register, a notice of proposed rulemaking was published, containing the same proposed regulation [5] that accompanied News Release IR-1687. The Service announced in its November 15, 1976, issue of the Internal Revenue Bulletin that the said amendment to the regulation was proposed, that hearings would be held on November 30, 1976, and that the last date for submitting comments would be November 23, 1976. *66 The final version of the regulation was filed on December 14, 1977 and published on December 19, 1977, as T.D. 7523, 42 Fed. Reg. 63640, 1978-1 C.B. 192. This version was substantially the same as that published in News Release IR-1687. Wing v. Commissioner,81 T.C. 17, 24 (1983). On the same day that T.D. 7523 was released, the Service revoked Rev. Rul. 70-20 and Rev. Rul. 74-214 in Rev. Rul. 77-489, 1977-2 C.B. 177. This Court has on several prior occasions confronted all of petitioner's arguments and rejected them. In Wendland v. Commissioner,79 T.C. 355 (1982), affd. per curiam 739 F.2d 580 (11th Cir. 1984), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984), this Court held that the amendment of section 1.612-3(b)(3), Income Tax Regs., was valid. We held that respondent did comply with section 553 of the Administrative Procedure Act and that amending section 1.612-3(b)(3), Income Tax Regs., retroactively pursuant to section 7805(b) was not an abuse of discretion. We held further that the legislative reenactment *67 doctrine did not bar respondent from amending the regulation. Our holding in Wendland,supra, was followed in Wing v. Commissioner,81 T.C. 17 (1983); Surloff v. Commissioner,81 T.C. 210 (1983); and Elkins v. Commissioner,81 T.C. 669 (1983). After an examination of the facts before us, we conclude that the cases cited above are controlling. Moreover, the partnership was formed on December 30, 1976, more than two months after the proposed regulations were published by the Service providing the partnership with ample time to structure its transaction. Accordingly, petitioner's contention that section 1.612-3(b)(3), Income Tax Regs., was invalidly amended must be rejected. We think that petitioner is not entitled to a deduction for his distributive share of the partnership loss claimed by Whitley. We base our conclusion on two grounds. First, based upon our determination that section 1.612-3(b)(3), Income Tax Regs., was validly amended, we hold that petitioner is not entitled to a deduction for advanced royalties in 1976. The regulation, as amended, provides that an advanced royalty may be deducted *68 only in the year the mineral with respect to which the advanced royalty is paid or accrued is sold and if sold before production, at the time the mineral is produced. Wendland v. Commissioner,supra.Whitley did not mine or sell any coal in 1976. However, the regulation, as amended, provides an exception to the above rule allowing a current deduction for advanced royalties paid or accrued "as a result of a minimum royalty provision." A minimum royalty provision is defined in the regulation as follows: For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. [Emphasis supplied.] In the instant case the lease agreement contained provisions for a nonrefundable minimum royalty for each year of the lease. However, the lease did not require that annual payments of minimum royalties be made. The total minimum royalty due on the lease was paid upon execution of the lease by the execution of a $1,020,000 *69 by a nonrecourse promissory note. Therefore, the lease provision fails to fall into the exception provided by section 1.612-3(b)(3), Income Tax Regs.
In addition, we agree with respondent that petitioner neve r had any bona fide intention of making a profit. To receive a deduction under section 162, the taxpayer must prove that his primary purpose and intention in engaging in the activity is to make a profit. Golanty v. Commissioner,72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). All relevant facts and circumstances must be taken into account. Jasionowski v. Commissioner,66 T.C. 312 (1976). Royalties have been held to be deductible under section 162(a)(3) [6] because they are viewed as akin to rent and the payor can deduct them as a trade or business expense. Commissioner v. Jamison Coal & Coke Co.,67 F.2d 342 (3d Cir. 1933). *70 After a careful examination of the facts presented, we are not convinced that the primary objective of Whitley was to make a profit from its coal mining ventures. No evidence is presented by petitioner that either he, or Penerali, the general partner of Whitley, had any expertise in coal mining. The record does not reveal that any attempts were made to determine the amount of mineable coal in the Mitchell Tract, or whether or not it was sufficient to recoup the investment made by the partnership. No provision was made in Whitley's mining contract with Medlin to construct roads or to install electricity on the mine premises. Other considerations crucial to a coal mining operation were not provided for by the partnership such as facilities for washing the coal and proper machinery. See Surloff v. Commissioner,81 T.C. 210 (1983). Moreover, Whitley did not mine, produce, or sell any coal in 1976, or make any payments on the nonrecourse note to Corbin. We conclude that Whitley was organized to generate tax deductions for its limited partners. This is evidenced by the lack of expertise in coal mining of the parties involved, the fact that no efforts were *71 made to determine whether the venture would be profitable, and the haste with which the partnership was formed two days before the end of the year in 1976. Accordingly, we sustain respondent on this issue. Petitioner has the burden of proof in regard to the final two deductions in this case for amounts paid to the general partner, and for miscellaneous business expenses. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). To meet his burden, petitioner must substantiate the amounts of the deductions claimed. Hradesky v. Commissioner,65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). See Fellrath v. Commissioner,T.C. Memo. 1981-476. Petitioner has not contested respondent's disallowance of these deductions, nor has he offered any evidence to substantiate them. Therefore, petitioner has either conceded these deductions, or he has failed to carry his burden of proof. Accordingly, we sustain respondent on these issues. Decision will be entered for the respondent.
Footnotes
1. The use of the terms "paid" or "payment" herein is for convenience only and is not intended to represent any conclusion concerning the true nature of the transaction at issue.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Section 1.612-3(b)(3), Income Tax Regs., adopted December 14, 1977, retroactive to October 29, 1976, provides as follows: (b) ADVANCED ROYALTIES. * * * * * * (3) The payor shall treat the advanced royalties paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. For purposes of the preceding sentence, in the case of mineral sold before production the mineral product is considered to be sold when the mineral is produced (i.e., when a mineral product first exists). However, in the case of advanced mineral royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor, at his option, may instead treat the advanced royalties as deductions from gross income for the year in which the advanced royalties are paid or accrued. See section 446 (relating to general rule for methods of accounting) and the regulations thereunder. For purposes of this paragraph, a minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount. For purposes of the preceding sentence, in the case of a lease which is subject to renewal or extension, the period for which it can be renewed or extended shall be treated as part of the term of the original lease. * * * The provisions of this subparagraph do not allow as deductions from gross income amounts disallowed as deductions under other provisions of the Code, such as section 461 (relating to general rule for taxable year of deduction), section 465 (relating to deductions limited to amount at risk in case of certain activities), or section 704(d) (relating to limitation on allowance to partners of partnership losses). In its prior form, sec. 1.612-3(b)(3), Income Tax Regs., read, in part, as follows: (3) The payor, at his option, may treat the advanced royalties so paid or accrued in connection with mineral property as follows: (i) As deductions from gross income for the year the advanced royalties are paid or accrued, or (ii) As deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid, is sold.↩
4. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in question. ↩
5. As proposed, the amended reguation provided, in part, as follows: (b) ADVANCED ROYALTIES. * * * * * * (3) The payor shall treat the advanced royalties so paid or accrued in connection with mineral property as deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. However, in the case of advanced royalties paid or accrued in connection with mineral property as a result of a minimum royalty provision, the payor at his option, may instead treat the minimum royalty payments as deductions from gross income for the year in which the minimum royalties are paid or accrued. For purposes of this paragraph, a minimum royalty provision requires that substantially uniform royalty payments be made at least annually over the life of the lease. * * * [41 Fed. Reg. 48133↩ (1976).]
6. Section 162(a)(3) provides: (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * * (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩