PATRICK J. KEOGH AND JUDITH KEOGH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Keogh v. Commissioner
Docket No. 6970-89
United States Tax Court
T.C. Memo 1990-131; 1990 Tax Ct. Memo LEXIS 131; 59 T.C.M. (CCH) 89; T.C.M. (RIA) 90131; March 13, 1990
*131 Held: Petitioners' motion for summary judgment will be denied. Sherin V. Reynolds, for the petitioners. Nancy M. Vinocur, for the respondent. *132 WHITAKER
*219 MEMORANDUM OPINION WHITAKER, Judge: This case is before us on petitioners' motion for summary judgment, filed under Rule 121. [1] Respondent has filed a notice of objection to petitioners' motion for summary judgment. At the outset, we note that petitioners' motion for summary judgment actually constitutes a motion for partial summary judgment since there are other issues in this case which will remain unresolved even if said motion is granted. Nevertheless, a motion for partial summary judgment is appropriate under Rule 121(b). In his notice of deficiency dated March 21, 1989, respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Tax
Section
Section
Section
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1985
$ 745,899 $ 37,295  *
$ 186,475
1986
9,392 [2] 470  *
2,348
*133 The sole issue with respect to which petitioners seek summary adjudication in their favor is whether the transfer of certain stock to petitioner Patrick J. Keogh was pursuant to the exercise of an "incentive stock option" under section 422A, thereby entitling petitioners to treat gain on the subsequent disposition of the stock as capital gain. At the time of filing the petition, petitioners resided in Easton, Connecticut. Hereinafter references to petitioner are to Patrick J. Keogh since only he was involved in the stock transactions in issue in this case. Epson America, Inc. (Epson) formed Vitex Distributors, Inc. (Vitex) on May 1, 1982, by contributing $ 375,000 in exchange for 37,500 shares of stock. [3]Epson and Vitex entered into a Distributorship Agreement on that same day. Pursuant to said agreement Vitex became one of 12 distributors for Epson, and as such engaged in the marketing and sales of Epson products. Petitioner entered into an *134 Employment Agreement with Vitex on May 1, 1982, pursuant to which he became that corporation's president and chief executive officer. Petitioner also entered into an Option Agreement with Epson and Vitex on that same day. Pursuant to the Option Agreement Vitex, which subsequently changed its name to Computronics Distributing Inc. (Computronics), offered petitioner options to purchase authorized but unissued shares of common stock of Computronics in accordance with the following schedule: 1.1.1.
On or after August 1, 1984, but before
February 1, 1985     Up to 6,618 shares
1.1.2.
On or after May 1, 1985, but before
November 1, 1985     Up to 9,453 additional
shares
1.1.3.
On or after May 1, 1986, but before
November 1, 1986     Up to 14,610 additional
shares
In the Option Agreement, Computronics acknowledged receipt from petitioner of $ 25,000 as an option payment to be credited toward the purchase price of shares of stock as follows: $ 5,000 toward the purchase price of stock purchased pursuant to paragraph 1.1.1., $ 10,000 toward the purchase price of stock purchased *220 pursuant to paragraph 1.1.2., and $ 10,000 toward the purchase *135 price of stock purchased pursuant to paragraph 1.1.3. The Option Agreement also provided that the price of shares of stock purchased by petitioner pursuant to said agreement was to be $ 5 per share. With the written consent of all parties thereto, the Option Agreement was modified on May 17, 1984, to allow petitioner to exercise the first stage of options on or after May 17, 1984, but before February 1, 1985. Petitioner obtained 6,618 shares of common stock of Computronics sometime after modification of the Option Agreement. On April 30, 1985, the Option Agreement was amended by an Amendment to Option Agreement. Pursuant to the Amendment to Option Agreement, petitioner waived his rights to exercise any unexercised options to purchase or otherwise acquire shares of stock of Computronics, including but not limited to those options exercisable in accordance with the schedule set forth in paragraphs 1.1.2. and 1.1.3. of the Option Agreement. The Amendment to Option Agreement further provided that in the event of any subsequent increase in the number of issued and outstanding shares of common stock of Computronics petitioner would be deemed to have been granted additional options *136 to acquire sufficient stock to maintain his 15-percent ownership of the total outstanding common stock of Computronics. By letter dated March 25, 1985, Jack A. Whalen, vice-president of Epson, advised petitioner that Epson would repurchase his shares of stock of Computronics to facilitate restructuring of the 12 regional distribution corporations as sales branch offices of Epson. As required by paragraph 3.5.1. of the Option Agreement, Computronics and Epson gave petitioner advance notice in the prescribed manner on March 29, 1985, that all of his shares of stock of Computronics would be repurchased. On May 1, 1985, petitioner, Computronics, and Epson entered into a Repurchase Agreement providing for the repurchase of petitioner's shares of stock of Computronics and the termination of the Option Agreement. Petitioner subsequently received a check in the amount of $ 1,414,365, which was drawn on Epson's account at Citibank (Delaware) Citicorp and dated June 27, 1985. On July 3, 1985, petitioner endorsed and assigned the 6,618 shares of stock of Computronics to Epson. Petitioner reported the gain on the sale of his shares of stock of Computronics on Schedule D of petitioners' *137 1985 joint Federal income tax return as long-term capital gain. In his notice of deficiency, respondent determined that petitioner's disposition of the stock of Computronics resulted in ordinary income, not capital gain. Under Rule 121(b), summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." See Naftel v. Commissioner, 85 T.C. 527, 529 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). The moving party bears the burden of proving that no genuine issue as to any material fact exists, and that he is entitled to judgment on the substantive issues as a matter of law. Naftel v. Commissioner, supra; Espinoza v. Commissioner, supra. In deciding whether to grant summary judgment, we view the factual material *138 and inferences drawn therefrom in the light most favorable to the opposing party. Naftel v. Commissioner, supra; Jacklin v. Commissioner, supra.However, the party opposing summary judgment may not simply rest upon the mere allegations or denials of his pleadings; his response, by affidavit or otherwise, must set forth specific facts showing the existence of a genuine issue for trial. Rule 121(d). Section 421(a) provides that the transfer of stock to an individual pursuant to the exercise of an option meeting the requirements of section 422A shall not result in income to the transferee, and any gain upon disposition of such stock will be capital gain. Petitioner argues that the undisputed facts of this case demonstrate that the transfer to him of 6,618 shares of stock of Computronics was pursuant to the exercise of an option meeting the requirements of section 422A. Respondent, on the other hand, argues that there are genuine issues of material fact which preclude summary judgment on the issue of whether the options granted to petitioner met all *139 of the requirements of section 422A. As defined in section 422A(b), the term "incentive stock option" means an option granted to an individual for any reason connected with his employment by a corporation, if granted by the employer corporation or its parent or subsidiary corporation, to purchase stock of any of such corporations, but only if the following requirements are satisfied: (1) the option is granted pursuant to a plan which includes the aggregate number of shares which may be issued under options and the employees (or class of employees) eligible to receive options, and which is approved by the stockholders of the granting corporation within 12 months before or after the date such plan is adopted; (2) such option is granted within 10 years from the date such plan is adopted, or the *221 date such plan is approved by the stockholders, whichever is earlier; (3) such option by its terms is not exercisable after the expiration of 10 years from the date such option is granted; (4) the option price is not less than the fair market value of the stock at the time such option is granted; *140 (5) such option by its terms is not transferable by such individual otherwise than by will or the laws of descent and distribution, and is exercisable, during his lifetime, only by him; (6) such individual, at the time the option is granted, does not own stock possessing more than 10 percent of the total combined voting power of all classes of stock of the employer corporation or of its parent or subsidiary corporation; (7) such option by its terms is not exercisable while there is outstanding (within the meaning of subsection (c)(7)) any incentive stock option which was granted, before the granting of such option, to such individual to purchase stock in his employer corporation or in a corporation which (at the time of the granting of such option) is a parent or subsidiary corporation of the employer corporation, or in a predecessor corporation of any of such corporations; and (8) in the case of an option granted after December 31, 1980, under the terms of the plan the aggregate fair market value (determined as of the time the option is granted) of the stock for which any employee *141 may be granted incentive stock options in any calendar year (under all such plans of his employer corporation and its parent and subsidiary corporation) shall not exceed $ 100,000 plus any unused limit carryover to such year. Sec. 422A(b)(1) through (8). [4]
In opposing petitioners' motion for summary judgment, respondent *142 asserts that the requirements set forth in section 422A(b)(1), (2), (4), and (8) were not satisfied. Thus, we must decide whether a genuine issue of material fact exists with respect to any of those requirements and, if not, whether petitioners are otherwise entitled to judgment on the incentive stock option issue as a matter of law. Incentive Stock Option Plan Petitioner asserts that the Option Agreement constituted a plan sufficient to satisfy the requirements of section 422A(b)(1). Specifically, petitioner asserts that both the aggregate number of shares which could be issued under options and the employees eligible to receive options (i.e., petitioner) were set forth in the Option Agreement. Petitioner further asserts that by executing the Option Agreement the stockholders of Computronics (i.e., Epson, the parent corporation of Computronics) approved of the incentive stock option plan set forth in said agreement within the prescribed period of time. To the contrary, respondent asserts that the parties to the Option Agreement never intended to grant petitioner incentive stock options and, therefore, that said agreement could not possibly constitute an incentive stock option *143 plan. Respondent further alleges that stockholders neither adopted nor approved an incentive stock option plan, separate and apart from the Option Agreement. Respondent's allegations, if proved, would demonstrate that the Option Agreement failed to satisfy the requirements of section 422A(b)(1), and that no other incentive stock option plan satisfying those requirements existed. Thus, there remain genuine issues of material fact regarding whether the 6,618 shares of stock of Computronics were transferred to petitioner pursuant to a properly approved incentive stock option plan. [5]
With respect to the inquiry respondent plans to make into the intentions of the parties to the Option Agreement, petitioner asserts that "Whether the corporate officers did or did not intend the Option *144 Agreement to qualify as an incentive stock option is irrelevant." Petitioner also asserts that "the Option Agreement speaks for itself," and that the parol evidence rule prevents respondent from going beyond the Option Agreement to determine the intent of the parties. We disagree. *222 The intent of the parties to the Option Agreement is relevant to our decision regarding the tax consequences of said agreement. Moreover, we may consider extrinsic evidence to determine the intent of the parties to the Option Agreement regardless of whether said agreement is ambiguous or unambiguous. If the Option Agreement is found to be ambiguous, we will be permitted to go beyond said agreement to determine the parties' intent. Smith v. Commissioner, 82 T.C. 705, 713-716 (1984). If the Option Agreement is found to be unambiguous, we will be permitted under the "third-party to the instrument rule" to go beyond said agreement to determine the parties' intent. That rule states that because respondent is an unrelated third party (i.e., not a party to the Option Agreement), neither petitioner *145 nor respondent may rely on the parol evidence rule to exclude extrinsic evidence offered by the other. Estate of Craft v. Commissioner, 68 T.C. 249, 260-261 (1977), affd. per curiam 608 F.2d 240 (5th Cir. 1979). The third-party to the instrument rule is an appropriate approach to use since we will be interpreting the Option Agreement to determine if the options granted to petitioner constituted "incentive stock options" within the meaning of section 422A(b). [6] Cf. Estate of Craft v. Commissioner, supra at 263. Duration of Plan In order to meet the requirement of section 422A(b)(2), an option must be granted within 10 years from the earlier of adoption or approval by stockholders of an incentive stock option plan. Petitioner *146 asserts that that requirement was satisfied, since the option was granted on May 1, 1982, the same day that the Option Agreement was adopted and executed by Epson. Respondent, on the other hand, asserts that the requirement of section 422A(b)(2) was not satisfied since stockholders neither adopted nor approved an incentive stock option plan by entering into the Option Agreement. As we previously concluded, there remain genuine issues of material fact with respect to whether the Option Agreement constituted a properly approved incentive stock option plan. Those issues must be resolved before we can decide whether the requirement of section 422A(b)(2) was satisfied. Option Price The option price of an incentive stock option may not be less than the fair market value of the underlying stock at the time the incentive stock option is granted. Sec. 422A(b)(4). However, that requirement is deemed to be satisfied if a good faith attempt is made to set the option price at an amount at least equal to the fair market value of the underlying stock at the time the incentive stock option is granted. *147 Sec. 422A(c)(1). The standard for measuring "fair market value" is the price at which the property would change hands between a hypothetical willing buyer and seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. United States v. Cartwright, 411 U.S. 546, 551 (1973). Thus, fair market value is inherently a question of fact to be resolved by weighing all the relevant evidence in the record and drawing appropriate inferences therefrom. Estate of Gilford v. Commissioner, 88 T.C. 38, 50 (1987). The question of whether an attempt to set the option price at or above the required minimum level was made in good faith also constitutes an essentially factual question. [7]
Petitioner asserts *148 that he obtained the 6,618 shares of stock in question by paying Computronics an option payment in the amount of $ 25,000 upon execution of the Option Agreement and $ 5 per share under the deferred payment plan outlined in said agreement. By adding those two amounts petitioner arrives at a sum of $ 58,090, or $ 8.78 per share, which he submits equaled the fair market value of the stock of Computronics as of May 1, 1982, the date the option was granted to him. Petitioner further asserts that he made every effort to pay fair market value for the shares of stock of Computronics. In support of his assertions, petitioner relies primarily upon his affidavit which was filed with this Court. In his affidavit, petitioner characterized Computronics as "a brand new corporation with no track record," and pointed out that at the time of formation Epson contributed only $ 10 per share for its sole, controlling interest therein. Petitioner also stated in his affidavit that the option price resulted from arm's-length negotiations between the parties to the Option Agreement. Respondent asserts that the option price was $ 5 per share. Respondent further asserts that petitioner paid only $ 33,090, *149 or $ 5 per share, for the 6,618 shares of stock of Computronics. In that connection, respondent points to the Notice *223 of Exercise of Option dated May 30, 1984, which stated that the purchase price for the 6,618 shares of stock of Computronics was $ 5 per share, or an aggregate of $ 33,090, and that the net purchase price (the aggregate purchase price less the amount of available option payment credit) was $ 28,090. Finally, respondent asserts that the fair market value of the Computronics stock on the date the option was granted exceeded the option price of $ 5 per share. We conclude on the record before us that genuine issues of material fact remain with respect to (1) the option price, [8] (2) the fair market value of the stock of Computronics on the date the option was granted to petitioner, and (3) the nature of the attempt made in setting the option price. Annual Dollar Limitation *150 on Grants Under section 422A(b)(8), the terms of an incentive stock option plan must limit the aggregate fair market value (determined at date of grant) of stock for which any employee may be granted incentive stock options in any calendar year, to not more than $ 100,000 plus any unused limit carryover. Petitioner's only assertion regarding any dollar limitation is as follows: [9]
Since the taxpayer paid a total of $ 58,090 for the 6,618 shares he received there is no violation of the $ 100,000 per year limitation and Section 422A(d)(1) is met. Respondent asserts that the fair market value of the stock of Computronics was at least $ 10 per share at the date of grant of options to petitioner and, therefore, that the Option Agreement failed to foreclose the possibility that the options granted *151 to petitioner were for stock having an aggregate fair market value at the date of grant in excess of the annual dollar limit. As an example, respondent points out that under the Option Agreement petitioner was granted the option to purchase 14,610 shares of stock of Computronics during the calendar year 1986 (i.e., on or after May 1, 1986, but before November 1, 1986), which according to respondent had an aggregate fair market value of at least $ 146,100. Because there remains a genuine issue of material fact regarding the fair market value of the stock of Computronics on the date the options were granted to petitioner, we cannot determine whether the terms of the Option Agreement limit the grant of options to petitioner as required by section 422A(b)(8). Moreover, petitioner never specifically made any assertions regarding that requirement. Conclusion In sum, we conclude that genuine issues of material fact exist with respect to whether the requirements needed to establish an incentive stock option under section 422A(b) were satisfied. Consequently, summary adjudication cannot be made under Rule 121(b) because a decision on those issues cannot be rendered as a matter of law. *152 Elkins v. Commissioner, 81 T.C. 669, 681-682 (1983). We do not express any view regarding the holding period and employment requirements of section 422A(a)[10] because denial of petitioners' motion for summary judgment is otherwise warranted due to the outstanding factual issues regarding the basic requirements of an incentive stock option under section 422A(b). *153 To reflect the foregoing, An appropriate order will be issued. Footnotes
1. Unless otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
*. 50 percent of the interest due on the underpayment (deficiency) determined respectively for each year ↩
2. Section 6653(a)(1) and section 6653(a)(2) were redesignated as section 6653(a)(1)(A) and section 6653(a)(1)(B), respectively, by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1503(a), 100 Stat. 2742. Thus, respondent determined the negligence additions to petitioners' 1986 tax pursuant to those redesignated sections.↩
3. Although the record is not entirely clear, the parties apparently agree that Epson received 37,500 shares of stock of Vitex (a.k.a. Computronics Distributing Inc.) in exchange for a capital contribution of $ 10 per share.↩
4. The Tax Reform Act of 1986, Pub. L. 99-514, sec. 321(a), 100 Stat. 2220, amended section 422A(b)(6) through (8). Section 422A(b) was also amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1003(d), 102 Stat. 3384-3385. However, petitioner apparently overlooked the fact that those amendments only apply to options granted after December 31, 1986. See Tax Reform Act of 1986, Pub. L. 99-514, sec. 321(c), 100 Stat. 2220; Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1019(a), 102 Stat. 3593. Thus, petitioner advances certain arguments regarding incentive stock options which are premised on requirements not applicable with respect to the options granted to him. Presumably, petitioner fails for that same reason to advance any arguments regarding the requirements of section 422A(b)(7) and (8)↩.
5. We must deny petitioners' motion for summary judgment because genuine issues of material fact exist with respect to whether the requirements of section 422A(b)(1) were satisfied. Rule 121(b). However, in an effort to assist the parties in narrowing the issues for trial, we will consider whether factual disputes also exist with respect to the requirements of section 422A(b)(2), (4), and (8)↩.
6. We take a different approach if a case involves a determination under state law as to the existence and extent of legal rights or property interests created by a written instrument. In Estate of Craft v. Commissioner, 68 T.C. 249 (1977), affd. 608 F.2d 240↩ (5th Cir. 1979), we examined the two approaches taken by this Court in applying the parol evidence rule.
7. With respect to stock that is not publicly traded, a good faith attempt is made where the option price for the stock is based upon the average of fair market values determined by "completely independent and well-qualified experts." See sec. 1.422-2(e)(2)(ii), Income Tax Regs.↩
8. We consider there to be a factual dispute regarding the option price because of the discrepancy between the option price set forth in the Option Agreement (i.e., $ 5 per share) and the amount purportedly paid by petitioner for the 6,618 shares of stock of Computronics (i.e., $ 8.78 per share).↩
9. Petitioner apparently overlooked the applicability of section 422A(b)(8), and asserted instead that the requirement of section 422A(d)(1) (Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1003(d)(2)(A), 102 Stat. 3384-3385) was satisfied. However, section 422A(d)(1) applies only with respect to options granted after December 31, 1986. See n. 4, supra↩.
10. In order for section 421(a) to apply with respect to the transfer of a share of stock to an individual pursuant to his exercise of an incentive stock option the following requirements of section 422A(a) must be satisfied: (1) no disposition of such share is made by him within 2 years from the date of the granting of the option nor within 1 year after the transfer of such share to him, and (2) at all times during the period beginning on the date of the granting of the option and ending on the day 3 months before the date of such exercise, such individual was an employee of either the corporation granting such option, a parent or subsidiary corporation of such corporation, or a corporation or a parent or subsidiary corporation of such corporation issuing or assuming a stock option in a transaction to which section 425(a) applies. Sec. 422A(a)(1) and (2)↩.